Kimberly S. PARISEAU, Plaintiff,

v.

ALBANY INTERNATIONAL CORPORA-
TION and Massachusetts Mutual Life
Insurance Company, Defendants.

Civ. A. No. 91–11117–Y.

United States District Court,
D. Massachusetts.

June 10, 1993.

Roger M. Ferris, Robert S. Ovoian, Attle-
boro, MA, for plaintiff.

Paul E. Stanzler, Burns & Levinson, Bos-
ton, MA, for Albany Intern. Corp.

Edward S. Rooney, Jr., Lyne, Woodworth
& Evarts, Boston, MA, for Massachusetts
Mut. Life Ins. Co.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

Kimberly S. Pariseau ("Ms. Pariseau")
brings this action against her employer, Al-
bany International Corporation ("Albany"),
and Massachusetts Mutual Life Insurance
("Mass. Mutual"), to recover insurance bene-
fits. She alleges breach of contract at com-
mon law and violations of the Massachusetts
consumer protection laws prohibiting unfair
and deceptive practices.[1] Albany and Mass.
Mutual jointly move to dismiss the complaint,
based on the preemption provision of the
Employee Retirement Income Security Act
of 1974, 29 U.S.C. § 1144(a) ("ERISA"). Ms.
Pariseau admits that ERISA is applicable,
but invokes the savings clause, 29 U.S.C.
§ 1144(b)(2)(A), which permits survival of
state claims designed to regulate insurance.

---

1. Mass.Gen.L. ch. 93A, §§ 2, 9(4), ch. 176D, § 3(9)(b), (d), (e), (m).

## FACTS AND PROCEDURAL HISTORY

Ms. Pariseau worked for Albany and subscribed to the health benefits plan offered to employees by Mass. Mutual. On September 14, 1989, she suffered injuries in an automobile accident, incurring medical expenses exceeding $10,000. Ms. Pariseau submitted these claims to her automobile insurance company, Arbella Mutual Insurance Company, and presented the excess amount, and another claim unrelated to the car accident, to Albany and Mass. Mutual, who refused to pay. Ms. Pariseau, after several futile attempts to collect, filed suit in the Massachusetts Superior Court sitting in Bristol County. Albany and Mass. Mutual removed the case to this Court, asserting original jurisdiction pursuant to ERISA, 29 U.S.C. § 1132(f). Ms. Pariseau admits this action relates to a health benefit plan regulated by ERISA, but contends that her state law claims are not preempted by ERISA pursuant to the savings clause.

## ANALYSIS

It is now clear beyond peradventure that, by enacting ERISA, Congress intended broad regulation of the field of employee benefit plans.[2] *Gray v. Quaker Fabric Corp.*, 809 F.Supp. 163, 166 (D.Mass.1992) (appeal pending) (*citing District of Columbia v. Greater Washington Bd. of Trade*, —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 [1992] ). The ERISA preemption clause declares that the ERISA provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Section 1144(b) of Title 29, however, known as the "savings clause," provides: "[n]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). It would thus appear from the statutory language itself that Congress intended broad remedial legislation to protect all Americans while, at the same time, preserving for each citizen many of the rights that citizen may have under the laws of her individual state.

Despite the facial appeal of this approach to the statutory framework, the Supreme Court views ERISA through a different prism, broadly construing the sweep of federal preemption but giving narrow compass indeed to the savings clause. *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 742–43, 105 S.Ct. 2380, 2390–91, 85 L.Ed.2d 728 (1985).

In *Metropolitan Life*, the Court determined that Mass.Gen.L. ch. 175, 47B, which required certain minimum mental health benefits, did indeed regulate insurance. First, the Court embarked upon a "common sense view of the matter," *id.* at 740, 105 S.Ct. at 2389, based on the explicit language of the savings clause, "presum[ing] that Congress did not intend to preempt areas of traditional state regulation." *Id.* Next, the Court defined "business of insurance," borrowing the phrase from the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.*, requiring that the law: (1) affect the spreading of policyholder risk; (2) play an integral part in the relationship between insured and insurer; and (3) limit itself to insurance entities. *Id.* at 743. Because Chapter 175, § 47B was designed to regulate mental health benefits, affected the risk-spreading of insurance contracts and played an integral role in the relationship between the insured and insurer, it qualified as regulating insurance under the savings clause. *Id.* at 743–44.

One year later, in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48–50, 107 S.Ct. 1549, 1553–54, 95 L.Ed.2d 39 (1987), the Court clarified its reasoning, requiring explicitly that a state law be specifically geared toward the insurance industry in order to qualify as "regulating insurance" under the savings clause. In *Pilot*, the plaintiff sought recovery for insurance benefits, alleging several state law claims including one based on the Mississippi law of bad faith. The case was dismissed at the trial level based on the preemption clause, but was reinstated by the Fifth Circuit based on the savings clause. *Id.* at 43–44, 107 S.Ct. at 1553–54. The

---

**2.** The parties agree that the benefit plan at issue falls within the purview of ERISA.

Supreme Court reversed, holding that the Mississippi law of bad faith was "root[ed] ... firmly ... in the general principles of Mississippi tort and contract law," rather than insurance law. This was so even though the Mississippi Supreme Court "identified its law of bad faith with the insurance industry." *Id.* at 50, 107 S.Ct. at 1554.[3]

In sum, after *Pilot,* the Supreme Court views ERISA as preempting claims arising under general state laws that simply relate to the insurance industry in regulating conduct generally, but saves for separate adjudication pursuant to state law those laws that actually regulate the insurance relationship specifically.

■ In the present case, the Court has little difficulty in concluding that Mass. Gen.L. ch. 176D, § 3 is "specifically directed toward [the insurance] industry." *Pilot,* 481 U.S. at 50, 107 S.Ct. at 1554. Indeed, this section of the Massachusetts General Laws specifically defines "[u]nfair methods of competition and unfair or deceptive acts or practices in the business of insurance" and sections 6 and 7 of the same chapter specifically empower the Massachusetts Insurance Commissioner to investigate and prevent such acts and practices. Mass.Gen.L. ch. 176D, §§ 3, 6, 7. Standing alone, however, these provisions, as matter of Massachusetts state law, avail Ms. Pariseau nothing as they create no private right of action in her. *Dodd v. Commercial Union Ins. Co.,* 373 Mass. 72, 75, 365 N.E.2d 802 (1977); *Mahaney v. John Hancock Life Ins. Co.,* 6 Mass.App.Ct. 919, 920, 380 N.E.2d 140 (1978); *Best v. AGFA Compugraphic,* 1992 WL 390713 at *3 (D.Mass.1992) (Zobel, J.). *See* Thomas P. Billings, *The Massachusetts Law of Unfair Insurance Claim Settlement Practices,* 76 Mass.L.Rev. 55, 59 (1991) (hereafter "Billings").

■ Chapter 93A of the Massachusetts General Laws, in contrast, proscribes unfair and deceptive acts and practices generally, Mass.Gen.L. ch. 93A, § 2, and prescribes the manner in which consumers, Mass.Gen.L. ch. 93A, § 9, and business persons, Mass.Gen.L. Ch. 93A, § 11, may pursue individual rights of action thereunder. As initially enacted, therefore, Chapter 93A sets out a general prohibition against unfair and deceptive acts or practices. The *Pilot* decision makes clear, therefore, that as initially enacted Mass. Gen.L. ch. 93A is not "regulating insurance" since it is a statute of general societal application.

Analysis does not end at this point, however. In 1979, the Massachusetts Legislature substantially rewrote section 9(1) of chapter 93A, providing expressly that a violation of the provisions of Mass.Gen.L. ch. 176D, § 3(9) *ipso facto* constituted a violation of Mass.Gen.L. ch. 93A § 9(1). Mass.Stat.1979, ch. 406, § 1. Surely this initial section of chapter 406 of the Massachusetts statutes of 1979 is a provision "specifically directed to [the insurance] industry" within the ambit of the *Pilot* decision in that it is manifestly designed to subject the insurance industry particularly to private party enforcement of the fair claims settlement practices of Mass. Gen.L. ch. 176D, § 3. *See* Billings, *supra,* at 59–60. This conclusion is cast into question, though, by consideration of chapter 406 as a whole. The statute not only subjects the insurance industry to the standards of chapter 93A, it also rewrites those general standards in significant ways. *Ibid.*

Does this general statutory re-working takes chapter 406 out of the ERISA savings clause as specifically interpreted in *Pilot?* [4] Perhaps so, but this Court need not ultimately rule on the point since, even if the *Pilot*

---

3. The *Pilot* court, by scrutinizing Mississippi common law, confirmed that ERISA applies even to non-statutory state law that relates to benefit plans.

4. The question in the text highlights the somewhat elastic nature of the analysis of the *Pilot* court. That is, if chapter 406 falls outside the ERISA savings clause due to the scope of the interest of the Massachusetts legislature, one imagines that the state legislature could remedy

the oversight—if that is what it is—simply by reenacting the insurance aspects of the statute alone. But what of it? It is hardly a criticism of the *Pilot* formulation that it ultimately leaves to the drafting skills of the state legislatures the decision whether so to regulate the insurance industry as to bring their enactment within the ERISA savings clause. After all, this would seem to be the Congressional intent in enacting the ERISA savings clause in the first place.

decision does not exclude chapter 406 from the operation of the savings clause, *Metropolitan Life* does so without question. This is so because, unlike the required mental health benefits discussed in *Metropolitan Life*, chapter 406 of the Massachusetts statute at issue here cannot logically be said to affect the "substantive terms of insurance contracts" themselves. Rather, it simply subordinates those terms to the performance standards found in Mass.Gen.L. ch. 176D. Under *Metropolitan Life*, this is not a sufficient effect on the substantive terms of the insurance contract here at issue to frustrate the national sweep of ERISA preemption and bring the case within the safe harbor of the ERISA savings clause so that Ms. Pariseau can benefit from the more extensive Massachusetts regulation of the insurance industry through Mass.Gen.L. ch. 93A, § 9(a) and 176D, § 3(9). *See Best*, 1992 WL 390713 at *3 n. 2 (Mass.Gen.L. ch. 176D "does not fall within ERISA's 'savings clause'").

## CONCLUSION

It follows that Ms. Pariseau's state claims, preempted as they are by ERISA, must be and hereby are dismissed. Ms. Pariseau shall have thirty days from the date of this Order to move for leave to amend—if, consistent with the requirements of Fed.R.Civ.P. 11, she can—to assert claims under ERISA.[5] Should she not so move, judgment will enter at the end of thirty days for the defendants. Should Ms. Pariseau move to amend, the parties shall file, within thirty days of the filing of the motion to amend, a Joint Proposed Case Management Scheduling Order pursuant to Local Rule 16.1, which Proposed Order shall set forth the month and year when the case shall go on the Running Trial List.

SO ORDERED.

---

**5.** As this case so clearly illustrates, the broad sweep of ERISA preemption [together with the limited "arbitrary and capricious" judicial review originally thought to be afforded under ERISA] and the narrow scope afforded to the more extensive state insurance regulation under the ERISA savings clause have stark real world consequences. Today, more than half of America's workers labor under ERISA benefit plans administered by self insurers as opposed to the more extensively state-regulated traditional insurance companies. Thus, whatever Congress may have originally intended by passage of the savings clause, entrepreneurial choice has significantly reduced the class of workers for whom the benefits of state insurance regulation are available. Today, while ERISA blankets the benefit plan landscape, its advantages have come at the cost of state insurance regulation for those who might heretofore have benefitted from such consumer oriented concerns.

As the Supreme Court has ruled, however, "wholesale importation of the arbitrary and capricious standards into ERISA is unwarranted," and questions of coverage and benefits contract interpretation are to be given the same de novo review generally afforded under the law of trusts. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109–10, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989) (emphasis omitted). Perhaps use of this more exacting standard of review, rather than the deferential arbitrary and capricious standard, will restore to plan beneficiaries some semblance of the statutory protections many states have sought to afford their citizens.