ROCCO PERRETTA, Plaintiff, *v.* ST. PAUL FIRE AND MARINE INSURANCE COMPANY, DETROIT FIRE INSURANCE COMPANY et al., Defendants.

(Supreme Court, Schenectady Trial Term, January, 1919.)

Foreclosure — mortgages — insurance (fire)— mortgagee clause — pleading — contracts — evidence — subrogation.

Where each of several policies insuring a building " while occupied as a dwelling " contained a provision that the policy should be void if the building, whether intended for occupancy by the owner or tenant, should be or become vacant or unoccupied and so remain for ten days, and conceding that the building was vacant at the time of the fire, it is disputed whether it was vacant for ten days before, the burden of proof to show the fact is upon the insurer.

After plaintiff had given to two individuals three mortgages upon certain real estate he conveyed the property, taking back a purchase money mortgage for $1,836, and a subsequent grantee insured the two dwellings on the property in one company for $2,000 and in another for $500. A New York standard mortgagee clause making the loss payable to the estate of the first mortgagees, they having died, to the amount of their claim and in excess to plaintiff as second mortgagee " as interest may appear," was attached to each of said insurance policies. One of the insured buildings was totally destroyed by a fire, the loss being $3,720, and though the insurers retained the proofs of loss filed by the owner of the property who had taken out the

insurance, no payment thereof was made. After the commencement of an action on each of the policies, to which the insurance companies and the executor of the deceased first mortgagees were made parties defendant, the insurance companies paid said executor $2,487.60, the amount of the three mortgages with interest, taking an assignment thereof, and after tendering plaintiff $12.40, the remainder of the insurance money, which was refused, there being due upon plaintiff's mortgage $1,736 and interest, the insurance companies answered the complaint claiming subrogation but failed to serve their answer upon the defendant who had taken out the insurance and she neither appeared nor answered in the action. *Held,* that the mortgagee clause providing that the insurance as to the interests of the mortgagees should not be invalidated by any act or neglect of the mortgagor owner, constituted a contract between the insurance companies and the mortgagees separate and distinct from that with the owner of the property.

Provisions in the policies for subrogation, assignment and transfer, and the condition that "no subrogation shall impair the right of the mortgagee to recover the full amount of his claim" were for the benefit of each of the mortgagees, consequently the payment to the executor of the first mortgagees was a payment of their mortgages so far as the plaintiff in the present action is concerned, and the insurance companies are required to pay the whole mortgage debt if they desire to assert their claims against the owner of the property, otherwise the insurance is of no benefit to plaintiff and is invalidated as to him by the act or neglect of the mortgagor.

That as in the present action brought to foreclose the mortgage for $1,836 and to determine its priority, upon the claim that the first three mortgages had been paid and extinguished so far as the mortgage in suit was concerned, the evidence required a finding that the destroyed building was vacant for more than ten days before the fire, plaintiff was entitled to the relief prayed for.

Action to foreclose a mortgage.

Frank Cooper, for plaintiff.

Ainsworth, Carlisle & Sullivan, for defendant insurance companies.

WHITMYER, J. The action has been brought to foreclose a mortgage, fourth as to date and as to time of record, upon certain property on Weaver street, in the city of Schenectady, N. Y., and for a decree that the said mortgage is prior to three other mortgages, previously given and now held by the defendant insurance companies. The facts are as follows: On June 5, 1899, plaintiff gave his bond for $1,000 to A. J. and T. M. Gilchrist, with a mortgage on said property, in the same sum, as collateral. The mortgage was recorded on June 8, 1899, in Book 197 of Mortgages at page 42. On March 15, 1902, he gave his bond for $800 to the Gilchrists, with a mortgage on the property, in the same sum, as collateral. That mortgage was recorded on April 3, 1902, in Book 118 of Mortgages at page 166. On August 10, 1903, he gave his bond for $800 to the Gilchrists, with a mortgage on the property, in the same sum, as collateral. And, that mortgage was recorded on that day in Book 136 of Mortgages at page 33. His wife joined in each mortgage. Later, the Gilchrists died and defendant Featherstonhaugh was appointed executor of the will of each. On January 31, 1913, plaintiff sold and conveyed the property to one Frank De Feo. He gave back his bond for $1,836, with a purchase money mortgage for the same sum, as collateral. That was recorded on February 3, 1913, in Book 197 of Mortgages at page 2 and is the mortgage in suit. On July 31, 1914, De Feo sold and conveyed the property to defendant Antonetta De Marco. The deed was recorded on September 11, 1914, in Book 237 of Deeds at page 225. There were two dwellings on the lot, one in front and the other in the rear. On May 14, 1916, Mrs. De Marco insured the same in the Detroit Company for $2,000 for three years. On July 14, 1916, she insured same in the St. Paul Company for $500 for

three years. Each company issued a policy accordingly. And, a New York standard mortgagee clause, making the loss payable to the " Estate of A. J. & T. M. Gilchrist, first mortgagee, to the amount of claim, and in excess thereof to Rocco Perretta, second mortgagee, * * * as interest may appear," was attached to each. The premiums were paid. On March 23, 1917, the dwelling in the rear was totally destroyed by fire. The loss was $3,720. Proofs of loss were filed by Mrs. De Marco within sixty days and were retained by the company, but they did not pay. On July 17, 1917, plaintiff commenced an action on each policy and made the companies, the executor of the Gilchrists and Mrs. De Marco parties in each. On August 28, 1917, the companies paid the executor the sum of $2,487.60, the amount of the Gilchrist mortgages, with interest, and took assignments of the mortgages. To plaintiff, they tendered the sum of $12.40, the remainder of the insurance. He refused to accept. The sum of $1,736, with interest from February 1, 1917, was and is the amount due on his mortgage. After the payment and the tender, the companies answered plaintiff's complaint and claimed subrogation. They did not serve upon Mrs. De Marco and she did not appear or answer. Thereafter and on February 8, 1918, plaintiff commenced this action to foreclose and to determine the question of priority. He claims that the Gilchrist mortgages have been paid and extinguished, so far as his mortgage is concerned. The companies have answered and claim (1) that the burned building was vacant for more than ten days before the fire, without a consent in writing, indorsed on the policies, as required thereby, and that the policies are, therefore, void as to the owner, (2) that the owner did not commence suit on the policies within twelve months after the fire, as required thereby, (3) that the mortgage interests of

the Gilchrists and of plaintiff are separate and distinct and the right of subrogation applies to each interest separately so that plaintiff's mortgage cannot be made a prior lien, and (4) that plaintiff's mortgage cannot be preferred over the Gilchrist mortgages because he executed the same and the bonds accompanying same and is personally obligated on the bonds. They served their answer on Mrs. De Marco on April 4, 1918. She served her answer on each company on July 20, 1918, the date of the first hearing. Defendant Pasquerella now has title to the property.

1. Each policy insured the building while " occupied as a dwelling " and provided that it should be void if the building, whether intended for occupancy by owner or tenant, should be or become vacant or unoccupied and so remain for ten days. It is conceded that it was vacant at the time of the fire. It is disputed that it was for ten days before. The burden of proof on the question was on the companies. *Van Valkenburgh* v. *American Pop. Life Ins. Co.,* 70 N. Y. 605; *Mead* v. *American Fire Ins. Co.,* 13 App. Div. 476, 480. They joined in an answer and alleged, among other things, that it was vacant for more than ten days before the fire and that the policies thereby became void as to the owner, Mrs. De Marco. She made and served a cross answer, by which, in addition to other denials, she denied the said allegation as to vacancy and alleged " that the agent of the said companies had full knowledge prior to the time of said fire that the said building was vacant and upon information and belief that the said defendant companies neglected to make out a written endorsement required by the said policy and deliver the same to the mortgagee, in whose possession the said policy was, which failure was unknown to this answering defendant, and that the said defendant companies are

and ought to be thereby estopped from asserting that the said policies are void because of any vacancy, if any, in the said premises.'' She alleges, then, that the agent of the defendants had full knowledge before the fire that the building was vacant and neglected to make out a written endorsement as required by the policy and that these facts constitute an estoppel. But such an endorsement was not required except where the vacancy was to be for ten days or more. The allegation, therefore, is to the effect that there was a vacancy for ten days, that the agent knew it and that he failed to make the required indorsement and the concluding allegation of the sentence does not change the effect. In addition, a plea of estoppel was unnecessary, unless there had been a vacancy for ten days or more. However, even if her answer may not be taken as an admission of vacancy contrary to the terms of the policies, in view of the denial which preceded the allegation in question, nevertheless it may be considered in connection with the evidence on the question. Three witnesses, Tony Napoleno, George Loudis and Guistine Leva, were sworn by the companies. Napoleno had lived in the front house for about three months before the fire and was living there at the time of the fire. He testified that he did not know exactly whether or not anybody was living in the rear house at the time of the fire, that no one was living there at the time, that he did not see anybody go in and out during the time that he lived in front, that he was working every day, that he did not know anything about it, and that he did not see any one while he was there. Loudis was living in the next house and was conducting a grocery there at the time of the fire and had been for some time before. He testified that he did not remember whether or not any one was living in the rear house at the time of the fire, that he did

not remember anyone who lived there, that he did not know the people who at any time lived there, and that he did not see people because he was busy. Leva had lived on the third floor of the front house for about two years before the fire and was living there at the time. On direct examination, he testified that no one was living in the rear at that time, that he did not remember how long before anybody had lived there, that two persons, whom he knew only by the names of Mary and Joseph, were the last ones who had lived there, and that it was his best recollection that they moved two or three months before, but that he did not remember. On re-cross examination, he testified that he did not remember when they moved, that he could not remember whether or not it was ten days, that it was a little more than a week. Questioned again by the attorney for defendants, he testified that it was two or three months before as far as he remembered. Again, in answer to a question by plaintiff's attorney, he said that he was not sure, that it was not more than ten days. Recalled by plaintiff's attorney, he testified that he did not have any real knowledge whether or not anyone lived there after they moved, and that he did not know or remember when they left and whether or not anyone was living there nine days before the fire. Recalled later and examined through an interpreter, he testified that the last time that he saw them there was a day or two, two or three days, before the fire. And, in answer to a question by the attorney for the companies, he testified that he did not remember when they moved away, that he was not sure whether or not they did so two or three months before, and that he did not remember whether or not they were living there two or three days before. The evidence was sufficient to put the plaintiff to proof. The record shows that plaintiff swore James Cipriano on this feature.

7

His attorney, acting also as attorney for Mrs. De Marco, claims that he was sworn for her. He testified that one Stephanello, living in South Schenectady, deposited five dollars with him on account of rent for the building or for a part of it, about a week before the fire. Stephanello had not taken possession at the time of the fire. Cipriano lived next door. He took this money for the owner and he must have known about the situation. Plaintiff did not ask him, nor did Mrs. De Marco. In addition, Mrs. De Marco owned the property, was a party to the action, had made and served a cross answer, sat in court throughout the trial, and did not testify. It is my opinion that the evidence requires a finding that the building was vacant for more than ten days before the fire.

2. Each policy provides that " no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity   *   *   *   unless commenced within twelve months next after the fire." The building was destroyed on March 23, 1917. Thereupon and on July 17, 1917, plaintiff brought actions on the policies, and demanded, in effect, that the insurance be applied on the several mortgages as far as it would go. An action by Mrs. De Marco would necessarily have required the same judgment. After paying the amount due on the Gilchrist mortgages and taking assignments thereof and after tendering to plaintiff what was left of the insurance, the companies answered and claimed subrogation, but they did not serve upon Mrs. De Marco and she did not appear or answer. After that and on February 8, 1918, plaintiff commenced this action. Defendant did not answer until April 4, 1918. That was more than a month after the expiration of the time to answer and more than twelve months after the fire. They served on Mrs. De Marco on that day and she made and

served her cross answer on each company on July 20, 1918, the day of the first hearing. They claim now that she is barred. But, suit or action by an owner is not required. Action by the mortgagee, the owner being a party, was sufficient.

3. Each policy contains the standard mortgagee clause, so far as material, as follows: " Loss or damage, if any, under this policy, shall be first payable to Estate of A. J. & T. M. Gilchrist, first mortgagee, to the amount of their claim, and in excess thereof to Rocco Perretta, second mortgagee, * * * as interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property * * *. Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of their claim.''
The property was encumbered by four mortgages. The first three belonged to the estates of A. J. & T. M. Gilchrist and amounted, at the time that the companies paid, to the sum of $2,487.60. The fourth belonged to plaintiff. The sum of $1,736 with interest from February 1, 1917, is due thereon. The loss by the fire amounted to $3,720. The insurance was for $2,500.

Each policy contained the standard mortgagee clause. As printed, the clause was designed, apparently, to take care of the interest of one mortgagee. It is in the singular. Here, all mortgagees and all mortgages were included, without a change to the plural. The loss is first payable to the estate of A. J. and T. M. Gilchrist, first mortgagee, to the amount of their claim, and in excess thereof to plaintiff, second mortgagee, as his interest may appear. That provision is followed by the one that insurance as to the interest of the " mortgagee " shall not be invalidated by any act or neglect of the mortgagor or owner. And that is followed by the provisions that the insurer, whenever it shall pay the mortgagee any sum for his loss or damage under the policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, shall be thereupon legally subrogated to the extent of such payment to all the rights of the party to whom the same shall be made " under all securities held as collateral to the mortgage debt," or that it may at its option pay to the mortgagee the whole principal due or to grow due on the mortgage with interest, whereupon it shall receive a full assignment and transfer of the mortgage and of all such other securities, upon the condition, however, that " no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of their claim." The insurance was taken out to increase the security of the mortgagees. The mortgagee clause constitutes a contract between the companies and the mortgagees, separate and distinct from that with the owner. It provides that the insurance, as to their interests, shall not be invalidated by any act or neglect of the mortgagor or owner. It gives them the same benefit as if they had taken out a separate policy, free from the conditions imposed upon the mortgagor or owner and leaves

them responsible only for their own acts. *Heilbrunn* v. *German Alliance Ins. Co.,* 140 App. Div. 557; affd., 202 N. Y. 610. It is for the benefit of each, with the difference that it provides for the payment of the loss or damage to the Gilchrists, to the extent of their claims, ahead of the payment to plaintiff. In the same way, the provisions for subrogation, assignment and transfer, and the condition that " no subrogation shall impair the right of the mortgagee to recover the full amount of his claim " are for the benefit of each. So that, the payment to the executors of the Gilchrists was a payment of the Gilchrist mortgages, so far as plaintiff is concerned, and the Companies are required to pay the whole mortgage debt, if they desire to assert their claims against the owner. Such is the plain meaning of the clause. Otherwise, the insurance is of no benefit to plaintiff and is invalidated so far as he is concerned by the act or neglect of the mortgagor. *Eddy* v. *London Assur. Corp.,* 143 N. Y. 311, 321. There were three mortgages in the Eddy case and they were owned by one mortgagee, but the result would not have been any different, if they had been owned by three mortgagees. The question of plaintiff's liability under the Gilchrist bonds was not raised by the answer and does not come up in this action. The diminution of plaintiff's security is the question which arises here.

Judgment accordingly.