636                46 Mass. App. Ct. 636 (1999)

The Money Store/Massachusetts, Inc. *v.* Hingham Mutual Fire Insurance Company.

THE MONEY STORE/MASSACHUSETTS, INC. *vs.* HINGHAM
MUTUAL FIRE INSURANCE COMPANY & another.[1]

No. 97-P-1322.

Middlesex. September 22, 1998. - April 16, 1999.

Present: KASS, FLANNERY, & RAPOZA, JJ.[2]

Further appellate review granted, 429 Mass. 1109 (1999).

*Insurance,* Homeowner's insurance, Fire, Mortgagee's interest, Subrogation.
*Mortgage,* Foreclosure, Priority. *Subrogation. Assignment.*

Both mortgagees listed on a homeowners insurance policy were entitled,
   pursuant to the standard mortgage clause, to policy proceeds to the extent
   of the loss occurring at the insured premises [639-640], and the insurer
   could not pay to its own account the product of exercising its subrogation
   and related assignment until indebtedness due the mortgagees had been
   fully paid [640-641], in the same order of precedence of the mortgages, in
   the amount of the loss, to the limit of the policy [641-642].
An insurer that took a full assignment and transfer of a first mortgage and as-
   serted its subrogation rights under the standard mortgage clause of a home-
   owners policy was bound to pay the second mortgagee the net proceeds of
   the foreclosure sale on the first mortgage. [642]

CIVIL ACTION commenced in the Superior Court Department on
June 3, 1994.

The case was heard by *Sandra L. Hamlin,* J.

*Ethan Warren* for Hingham Mutual Fire Insurance Company.

*Robert H. Greene* for the plaintiff.

*Norman J. Guz, Jr.,* for Chicopee Savings Bank, was present
but did not argue.

KASS, J. On a complaint by The Money Store/Massachusetts,
Inc. (Money Store), a judge of the Superior Court declared that
Money Store, as a named second mortgagee in a fire insurance

[1]Chicopee Savings Bank.

[2]This case was originally argued on September 22, 1998, before Justices
Kass, Flannery, and Rapoza. Following the death of Justice Flannery in
December, 1998, the case was reassigned and Justice Laurence joined in
consideration of the case on the basis of the briefs and the record appendix.

policy issued by Hingham Mutual Fire Insurance Company (Hingham Mutual), was entitled to recover $21,558 against its mortgage debt under that insurance policy, and that Hingham Mutual could not wipe out Money Store's interest through exercise of subrogation and assignment rights acquired when Hingham Mutual paid the debt of the insured to a first mortgagee. From that judgment Hingham Mutual appeals. We affirm.

On the declarations of coverage of a homeowner's insurance policy (Special Form HO-3), issued by Hingham Mutual on a residential property at 50 Montgomery Street, Springfield, the policy listed two mortgagees, Chicopee Savings Bank (first mortgagee) and Money Store (second mortgagee). The insurance coverage on the dwelling was to a limit of $100,000. On November 29, 1992, a significant loss occurred, although that loss was within the policy limits.[3] Hingham Mutual paid the balance of the first mortgage note, $40,600, to Chicopee Savings Bank. Under a clause in the policy, the insurer thereby became subrogated "to all rights of the mortgagee granted on the mortgage on the property." As an option, the insurer could also take from a mortgagee whose debt had been paid "a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt." Hingham Mutual did take such an assignment from Chicopee Savings Bank.

Armed with the assignment and its subrogation rights, Hingham Mutual proceeded to foreclose on the first mortgage, thereby purporting to wipe out the junior mortgage held by Money Store and any claims by Money Store against the insurance policy. At the time of the foreclosure sale, the fair market value of the damaged premises was between $35,000 and $40,000. Hingham Mutual was the only bidder, and bid the property in at $30,000, none of which was applied to Money Store's second mortgage. The loss to the premises from the explosion and subsequent fire was $40,648.40.[4] In its complaint, Money Store requested that the court consider the debt on the first mortgage as of the time of the foreclosure to be zero (as

---

[3]The owner of the property, Krystyna Matsunaga, caused the damage intentionally by setting off an explosion. Under operation of G. L. c. 175, § 99, the wrongful act of the owner of property does not cut off the rights of mortgagees to claim against the mortgagee loss payable clause of a fire insurance policy.

[4]These figures were agreed upon in a statement filed by the parties.

Hingham Mutual had paid it off) and that Money Store was entitled to the $30,000 in foreclosure sale proceeds, or the fair market value of the property at the time of foreclosure.

In arriving at a judgment of $21,558 (plus interest and costs) in favor of Money Store, the Superior Court judge subtracted from the $30,000 in gross proceeds of the foreclosure sale: Hingham Mutual's cost of carrying the property (taxes, water, sewer), expenses of foreclosure, and legal fees. Hingham Mutual's position on appeal is that the subrogation and assignment language in the fire insurance policy allow it to step into the shoes of Chicopee Savings Bank, the first mortgagee, and through foreclosure of the first mortgage to extinguish the second mortgage interest. Statutory and decisional law are to the contrary.

1. *Policy provisions.* We start with the fire insurance policy, which is a standard form prescribed in G. L. c. 175, § 99. When considering a policy based on statutory requirements, if the language when applied exposes an unanswered question, we attempt, in the process of interpretation, to be faithful to the legislative design. *Mailhot* v. *Travelers Ins. Co.,* 375 Mass. 342, 345 (1978). *Cardin* v. *Royal Ins. Co. of America,* 394 Mass. 450, 453-454 (1985). *Amica Mut. Ins. Co.* v. *Bagley,* 28 Mass. App. Ct. 85, 90 (1989). All the pertinent provisions of the insurance policy (including the subrogation and assignment provisions from which we have quoted) appear in a section entitled "Mortgage Clause," and read as follows:

> "If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages . . . .

> "If we pay the mortgagee for any loss and deny payment to you:

> "a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

> "b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt."

46 Mass. App. Ct. 636 (1999)                                    639

The Money Store/Massachusetts, Inc. *v.* Hingham Mutual Fire Insurance Company.

The very next, and last, subparagraph in the mortgage clause section, however, provides:

"Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim."

The question arises whether this nonimpairment provision limits the rights the insurer receives in the event of an assignment.

2. *Contractual obligations of insurer to mortgagees.* The mortgage clause set out above is widely known as the "standard mortgage clause." See 4 Couch, Insurance § 65.32 (3d ed. 1997). See also *Palmer Sav. Bank* v. *Insurance Co. of N. America,* 166 Mass. 189, 193-195 (1896); *Gibraltar Fin. Corp.* v. *Lumbermens Mut. Cas. Co.,* 400 Mass. 870, 871 (1987); *Pierce* v. *Sentry Ins.,* 12 Mass. App. Ct. 124, 126-127 (1981).[5] Under the standard mortgage clause, the contractual obligation of the insurer to the mortgagees is treated as one that is separate from the obligation of the insurer to the owner of the insured property. Though the policy is usually bought by the mortgagor, "[t]he effect of such a policy is the same as if the mortgagor had taken out the insurance in his own name, and then assigned it to the mortgagee," except no act of the mortgagor defeats the mortgagee's interest. *Palmer Sav. Bank* v. *Insurance Co. of N. America, supra* at 194. G. L. c. 175, § 99. *Perretta* v. *St. Paul Fire & Marine Ins. Co.,* 106 Misc. 91, 100, 174 N.Y.S. 131, 136 (N.Y. Sup. Ct. 1919). 4 Couch, Insurance § 65.36.

Indeed, under the clause, a mortgagee is not merely a party with an interest, but is often the paramount party for whose benefit the insurance was obtained. *In re McLean Indus., Inc.,* 132 B.R. 271, 279 (Bankr. S.D.N.Y. 1991). The purpose of the clause establishing a separate contractual relationship between an insurer and a mortgagee is to give the mortgagee better security by insulating it from something the mortgagor might do to invalidate the policy, like blowing up the insured premises, which is what the insured owner did in the instant case. *Attleborough Sav. Bank* v. *Security Ins. Co.,* 168 Mass. 147, 149 (1897). *Pierce* v. *Sentry Ins., supra* at 127. *Clemons* v. *American Cas. Co.,* 841 F. Supp. 160, 162 (D. Md. 1993). The importance of the separate contractual obligation of the insurer to

---

[5]Among the initiate, the standard mortgage clause is also known as the "union" or "New York" mortgage clause. *Clemons* v. *American Cas. Co.,* 841 F. Supp. 160, 162 (D. Md. 1993), and cases cited.

mortgagees is twice emphasized in G. L. c. 175, § 99, as appearing in St. 1951, c. 478, § 1, as amended by St. 1977, c. 801, § 2, first in clause ninth, which provides, "Nothing herein shall authorize any addition to or modification of any of the provisions of said standard form relative to the rights of a mortgagee"; and, second, in clause twelfth (laying out the standard form) which includes the provision referred to in note 3 to this opinion, i.e., that the wrongful act of the owner does not cut off the rights of mortgagees.

In consequence of the contractual relation between an insurer and a mortgagee under the standard mortgage clause, the insurer is obliged to pay the debts due listed mortgagees to the extent of the loss or the policy limits, whichever is higher. *Palmer Sav. Bank* v. *Insurance Co. of N. America,* 166 Mass. at 195. *Ben-Morris Co.* v. *Hanover Ins. Co.,* 3 Mass. App. Ct. 779, 779-780 (1975). *Eddy v. London Assur. Corp.,* 143 N.Y. 311, 320 (1894). As both Chicopee Savings Bank and Money Store were listed in the Hingham Mutual policy and had mortgage balances due them at the time of the explosion and fire, both were entitled to policy proceeds to the extent of the loss.

3. *Effect of the subrogation and assignment clauses.* Subrogation is built into insurance policies to avoid unjust enrichment through double recoveries. If, for example, the insurance company pays the debt due a mortgagee, that mortgagee ought not to be able to recover the mortgage debt a second time from the mortgagor, whose note will still be outstanding. Upon payment of the mortgagee, subrogation places the insurer in the shoes of the mortgagee and entitles the insurer to pursue any remedies the mortgagee might have had, most obviously the remedy of foreclosure. *Frost* v. *Porter Leasing Corp.,* 386 Mass. 425, 426-428 (1982). Subrogation also prevents a windfall to an insured, such as the one in this case, who although by reason of her actions (blowing up the insured premises) cannot collect insurance proceeds, would, but for subrogation rights, receive a benefit from having her mortgage debt paid. *Id.* at 428. See *Farr Man & Co.* v. *M/V Rozita,* 903 F.2d 871, 878 (1st Cir. 1990).

The utility of the assignment clause is the same. Taking an assignment of the position of a mortgagee whom the insurer has paid in full enables the insurer, with fewer steps, to recoup from the property what the insurer has paid out. Cf. *Allen* v. *Watertown Fire Ins. Co.,* 132 Mass. 480, 483 (1882); *Canton Co-op.*

*Bank* v. *American Cent. Ins. Co.*, 219 Mass. 132, 135 (1914). Neither the subrogation mechanism nor the assignment device is supposed to bestow a windfall on the insurer as to junior mortgagees. Were that not so, the obligation to pay junior mortgagees would be meaningless; insurers could and would cheerfully pay off the first mortgagee, foreclose, and shut out the junior mortgagees. Touching on the very point of an insurer who sought to retain foreclosure proceeds when part of the mortgage debt was still unpaid, the court in *Eddy* v. *London Assur. Corp.*, 143 N.Y. at 321, said that if an insurer can recover its outlays from foreclosure proceeds while mortgagee debt is unpaid, then there really has been no insurance. "They [the insurers] lose nothing, and only the mortgagee loses." *Ibid.* The *Eddy* opinion emphasized the function of "nonimpairment" language similar to that which appears in Hingham Mutual's policy, namely, that "subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim."

For two reasons we think unpersuasive Hingham Mutual's suggestion that the nonimpairment clause, because it refers to subrogation, does not apply to the assignment option. First, as we have remarked, the assignment option is the functional equivalent of subrogation; second, as the nonimpairment clause is printed in the policy, it speaks to the preceding subparagraphs a and b, which spell out, successively, the subrogation right and assignment option. A New Jersey court, deciding that an insurer's rights from subrogation and assignment may only be exercised after the mortgagee has recovered its debt from a combination of insurance policy proceeds, foreclosure proceeds, and payments by the mortgagor, thought the relative paucity of cases expressly so holding was "probably because that is so obvious and well settled under our form of mortgage clause [the standard clause] that the question is seldom raised." *First Fed. Sav. & Loan Assn. of Hammonton* v. *Hartford Fire Ins. Co.*, 100 N.J. Super. 252, 254 (1968). See *Perretta* v. *St. Paul Fire & Marine Ins. Co.*, 106 Misc. at 99-101, 174 N.Y.S. at 136-137.

We conclude that under the standard mortgage clause, Hingham Mutual could not pay to its own account the product of exercising its subrogation and related assignment until indebtedness due the mortgagees in connection with the damaged property had been fully paid.

4. *Priority of interest.* There is nothing to the argument that

because the standard mortgage clause refers to "a mortgagee" it refers only to one. The policy expressly provides that "if more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages." See *Perretta* v. *St. Paul Fire & Marine Ins. Co.*, 106 Misc. at 99-101, 174 N.Y.S. at 136-137; 4 Couch, Insurance § 65.68. To illustrate, if there were a $100,000 loss (and the policy limit covered that) and a first mortgage balance of $60,000, a second mortgage balance of $20,000, and a third mortgage balance of $10,000, the insurer would be bound to pay those losses. Whether the owner/insured would receive the balance of $10,000 would depend on whether it had committed an act that made the policy void as to the owner/insured. Whatever the insurer recovered through exercise of subrogation or the related assignment rights, it could keep. Assuming a loss of $100,000, a first mortgage of $60,000, and a second mortgage of $50,000, the second mortgagee would be entitled to no more than $40,000, because the insurer will have paid the entire loss, the limit of its obligations under the policy.

In this case, it will be recalled, the first mortgage debt ($40,600) and the adjusted loss ($40,648.40) were so close in amount that, as a practical matter, application of the loss under the policy to the first mortgage debt discharged that debt and consumed the proceeds payable under the policy.[6] Under the principles we have described, what net proceeds Hingham Mutual recovered through exercise of its subrogation rights or as assignee of the first mortgagee, it was bound to pay to Money Store. Hingham Mutual was not obligated to pay the costs of carrying the property and mortgage foreclosure; i.e., contrary to what Money Store has argued in a cross appeal, Hingham Mutual was obligated to pay against the second mortgage debt the net proceeds, not gross proceeds, from the foreclosure sale.

*Judgment affirmed.*

---

[6]Although the policy had a face amount of $100,000, the proceeds available under it would not exceed the amount of the loss.