# United States Court of Appeals
## For the First Circuit

No. 99-1579

CONTINENTAL INSURANCE COMPANY,

Plaintiff, Appellee,

v.

ANTHONY BAHNAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Lynch, Circuit Judge.

John W. Spillane, with whom Spillane & Spillane, LLP was on brief, for appellant.
James T. Hargrove, with whom Dana F. Rodin, Timothy N. Schofield, and Goulston & Storrs, P.C. were on brief, for appellee.

June 26, 2000

**SELYA, Circuit Judge.** Continental Insurance Company issued a Business Owners Xtra (BOX) policy to Anthony Bahnan. The policy covered a three-family house situated at 17 Mott St., Worcester, Massachusetts. A fire occurred a few months after coverage had attached, and Bahnan made a claim. In the course of the ensuing investigation, Continental came to suspect that Bahnan had misrepresented the condition of the premises. From that point forward, the parties' relationship became adversarial.

For purposes of this appeal, we need not recount the ebb and flow of subsequent events, save only to note that Continental, though rejecting Bahnan's claim, paid the actual cash value of the fire loss to the mortgagee designated in the policy (one Gordon Koury). We shall return to the Koury payment shortly. Before doing so, however, we deem it fitting to describe the underlying litigation.

In a variation on the usual insured/insurer pas de deux, Continental seized the initiative. It sued Bahnan in the district court under diversity jurisdiction, see 28 U.S.C. § 1332(a), seeking to recoup the Koury payment and to collect other damages. Its complaint contained a claim for intentional misrepresentation as well as a claim for deceptive business practices under Mass. Gen. Laws ch. 93A. Bahnan answered the

-3-

complaint and launched a fleet of counterclaims (some of which also invoked chapter 93A).

Following a period of pretrial discovery, Continental moved for summary judgment on the counterclaims. See Fed. R. Civ. P. 56. The district court granted this motion as to five counterclaims, leaving the other four intact. See Continental Ins. Co. v. Bahnan, C.A. No. 94-11304, slip op. (D. Mass. Nov. 6, 1997) (Bahnan I). Next, the court conducted a five-day jury trial on Continental's misrepresentation claim and Bahnan's breach-of-contract counterclaim. The jury, in answer to a special question, found that Bahnan had knowingly misrepresented a material fact when procuring the policy. Consequently, it awarded Continental damages of $56,000 (to reimburse it for the Koury payment and certain other expenses) and returned a take-nothing verdict on the tried counterclaim.

Under Massachusetts law, claims premised on chapter 93A are triable to the court, not to the jury. See Nei v. Burley, 446 N.E.2d 674, 677 (Mass. 1983). In pursuance of this mandate, Judge Gorton addressed the parties' chapter 93A claims after the trial and resolved them in a written rescript. See Continental Ins. Co. v. Bahnan, C.A. No. 94-11304, slip op. (D. Mass. Feb. 18, 1999) (Bahnan II). Neither side enjoyed any affirmative success: the court found in Bahnan's favor on Continental's

chapter 93A claim and in Continental's favor on Bahnan's surviving chapter 93A counterclaims. This appeal followed.

Bahnan serves up a salmagundi of arguments. We have reviewed the record with care, and we are satisfied that these arguments lack force. None requires extended discussion. Hence, we offer only a few relatively brief comments, responding to Bahnan's most loudly bruited points.

**First**: The district court instructed the jury on the law of agency as it pertains to the attorney-client relationship. Bahnan assigns error. We detect none.

A party is entitled to an instruction on its theory of the case as long as that theory is legally valid and factually supported. See Febres v. Challenger Caribbean Corp., ___ F.3d ___, ___ (1st Cir. 2000) [No. 98-1916, slip op. at 10]; United States v. DeStefano, 59 F.3d 1, 2 (1st Cir. 1995). Bahnan does not question the wording of the instruction that the court gave in this instance, but alleges that it lacked sufficient grounding in the record and therefore should have been left unsaid. The nisi prius roll belies this allegation.

To put matters into perspective, it should be noted that Bahnan predicated his breach-of-contract counterclaim on Continental's refusal to pay him for the fire damage to the insured structure. Continental defended on several bases,

including the ground that it had rescinded the policy.  The evidence at trial suggested that an attorney, Edward G. Shamgochian, had accompanied Bahnan when the latter gave his pre-suit examination under oath to the insurer, see Mass. Gen. Laws ch. 175, § 99; that Shamgochian conducted himself in a manner consistent with that of a lawyer representing a client; and that Shamgochian thereafter communicated with Continental's counsel on Bahnan's behalf.  The evidence also showed that, when Continental purposed to rescind the policy, it corresponded with Shamgochian and, in the end, sent the refund-of-premium check to him (for forwarding to Bahnan).

This evidence adequately underpinned Continental's argument that Bahnan acquiesced in the rescission by cashing the check.  Similarly, it justified the district court's decision to instruct on the attorney-client relationship, notwithstanding denials by Shamgochian and Bahnan that such a relationship had been forged.  Given standard principles of agency law and Shamgochian's actions on Bahnan's behalf, the record supported — even though it did not compel — a finding that Shamgochian acted for Bahnan and that delivery of the refund-of-premium check to him, along with explanatory correspondence, was the functional equivalent of delivery to Bahnan.  See Hudson v. Massachusetts Prop. Ins. Und'g Ass'n, 436 N.E.2d 155, 159 (Mass.

1982); <u>Jones</u> v. <u>Harrar</u>, 95 N.E.2d 646, 648 (Mass. 1950); <u>see also</u> <u>Levin</u> v. <u>Berley</u>, 728 F.2d 551, 553 (1st Cir. 1984) (explaining that a client is chargeable with knowledge gleaned by his attorney).

At any rate, the lower court instructed on the law of agency and the attorney-client relationship only in regard to Question No. 2, which asked: "Did Bahnan prove that Continental breached the insurance contract?" The court painstakingly explained to the jurors that this interrogatory related to Bahnan's breach-of-contract counterclaim and Continental's rescission defense. The jurors were told not to consider Question No. 2 <u>at all</u> if they answered Question No. 1 in the affirmative. Because the jurors replied "yes" to Question No. 1 (finding, in effect, that the policy was void <u>ab initio</u> by reason of Bahnan's material misrepresentation), they never reached the rescission issue and thus had no occasion to consider the challenged instruction. Accordingly, any error was harmless. <u>See</u> <u>Faigin</u> v. <u>Kelly</u>, 184 F.3d 67, 87 (1st Cir. 1999); <u>Mutual Fire, Marine & Inland Ins. Co.</u> v. <u>Costa</u>, 789 F.2d 83, 88 (1st Cir. 1986); <u>cf.</u> <u>Evans</u> v. <u>Avery</u>, 100 F.3d 1033, 1041 (1st Cir. 1996) ("Jurors are presumed to follow the court's instructions. . . .").

**Second:** Bahnan's second critique of the charge — his contention that the district court erred by neglecting to instruct that only misrepresentations made with respect to conditions precedent to coverage or matters specifically prescribed by Mass. Gen. Laws ch. 175, § 99 could serve to annul the policy — is procedurally defaulted and substantively flawed to boot.

The record makes manifest the procedural default. Simply put, Bahnan failed to register this objection at the time and in the manner dictated by Fed. R. Civ. P. 51. We have been implacable in our insistence upon strict compliance with the letter of Rule 51, see, e.g., Faigin, 184 F.3d at 87; Toscano v. Chandris, S.A., 934 F.2d 383, 384-85 (1st Cir. 1991); McGrath v. Spirito, 733 F.2d 967, 968-69 (1st Cir. 1984), and there are no excusatory circumstances here.

If more were needed — and we do not think that it is — Bahnan's proposed instruction was inaccurate. Under Massachusetts law, any material misrepresentation, whether made before or after a policy issues, may serve as a basis for avoiding coverage. See Shapiro v. American Home Assur. Co., 584 F. Supp. 1245, 1249 (D. Mass. 1984); Hanover Ins. Co. v. Leeds, 674 N.E.2d. 1091, 1096 (Mass. App. Ct. 1997); see also Mass. Gen. Laws ch. 175, §§ 99, 186. Since Bahnan's proffered

-8-

instruction erroneously limited material misrepresentations to those touching upon either conditions precedent or specific statutory requirements, the court properly rebuffed it. Virtually by definition, a trial judge does not err when he or she denies a party's request for a jury instruction that is legally incorrect.[1] See Febres, ___ F.3d at ___ [slip op. at 14]; Faigin, 184 F.3d at 87.

**Third:** Bahnan also calumnizes the district court for refusing to charge the jury that Continental's handling of the mortgage claim breached its contractual obligations. This attack reflects a gross misunderstanding of both the applicable law and the provisions of the BOX policy. We explain briefly.

At the time of the fire, Koury was owed approximately $90,000 on the mortgage note. Continental paid him the actual cash value of the loss ($50,000). Refined to bare essence, Bahnan's position is that: (a) Continental was legally obligated to take an assignment of the note and mortgage coincident with its payment to Koury, and (b) its failure to do so breached the policy. Bahnan is wrong on both counts.

_____

[1]Bahnan seems to suggest that the district court's "material misrepresentation" instructions, as given, were wide of the mark. To the extent that he links that argument to his "conditions precedent/specific statutory requirements" argument, we reject it for the reasons stated in the text. In any event, Bahnan did not lodge a contemporaneous objection to this aspect of the district court's charge, and we see no plain error.

The BOX policy contains a rather conventional "mortgage payable" clause that reads in pertinent part:

> If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:
> - the mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
> - the mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.
>
> At our option, we may pay the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

Under this proviso,[2] the insurer's obligation to the mortgagee is independent from its obligation to the mortgagor (typically, the named insured). See Pierce v. Sentry Ins., 421 N.E.2d 1252,

_____

[2]The substance of this clause tracks the corresponding statutory requirement for standard fire insurance policies written in Massachusetts, viz.:

> [W]henever this company shall be liable to a mortgagee for any sum for loss under this policy for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the company interested, upon such payment, the said mortgage together with the note and the debt thereby secured.

Mass. Gen. Laws ch. 175, § 99.

-10-

1254 (Mass. App. Ct. 1981). Where, as here, the insurer has a defense as to the insured/mortgagor, but none as to the mortgagee, it may pay the mortgagee the lesser of the actual cash value of the loss sustained or the full amount secured by the mortgage. See Eliot Five-Cent Sav. Bank v. Commercial Union Assur. Co., 7 N.E. 550, 552 (Mass. 1886). Only if the insurer chooses the latter course is it entitled to an assignment of the note and mortgage.

Bahnan's argument merges (or, at least, blurs the distinction between) the alternate pathways that this paradigm creates. There is an option, and that option is quite clearly the insurer's. When the insurer elects the former course — as it did here — it is entitled to limit its payment to the mortgagee to the actual cash value of the loss sustained. In that event, however, it has no right to demand an assignment of the note and mortgage, but, rather, must leave the mortgagee free to pursue a claim for the unpaid balance of the indebtedness.[3] See Eliot Five-Cent Sav. Bank, 7 N.E.2d at 552.

---

[3]We are unimpressed by Bahnan's citation to Money Store/Mass., Inc. v. Hingham Mut. Fire Ins. Co., 708 N.E.2d 687 (Mass. App. Ct. 1999). Even if supportive of Bahnan's theory — a dubious proposition — that opinion was overruled on further review by the Supreme Judicial Court, see 718 N.E.2d 840 (Mass. 1999), and has no precedential force.

-11-

**Fourth**: Contrary to Bahnan's importunings, the jury's verdict was supported by substantial evidence in the record. For example, Continental presented proof from which a factfinder reasonably could conclude that Bahnan, when applying for the policy, had submitted a false lead paint compliance letter regarding the second-floor apartment. It also adduced competent evidence that this submission was material to the risk because, without the compliance letter, the underwriters would not have authorized issuance of the policy. No more was exigible to justify a finding that the policy was void (and, hence, a verdict for Continental). See Barnstable County Ins. Co. v. Gale, 680 N.E.2d 42, 44 (Mass. 1997) (explaining that a fact is "material" so long as it would naturally be expected to influence an underwriter's judgment in determining whether to issue a policy).

**Fifth**: Shifting his focus from the trial to the antecedent summary judgment ruling, Bahnan asseverates that the district court erred in disposing summarily of two counterclaims that aspired to invoke Mass. Gen. Laws ch. 93A, § 9. We think not.

Broadly stated, chapter 93A was designed to foster more civilized behavior in the business world. See Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998); Quaker

-12-

St. Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513 (1st Cir. 1989). To achieve this laudable end, the statute prohibits those engaged in trade or commerce from utilizing "unfair or deceptive acts or practices" in the course of business transactions. Mass. Gen. Laws ch. 93A, § 2. The statute enforces this proscription in various ways, including the creation of private rights of action. See, e.g., id. §§ 9, 11. By their terms, however, the two sections of chapter 93A that create private rights of action are mutually exclusive: section 11 entitles "[a]ny person who engages in the conduct of any trade or commerce" to bring an action for unfair or deceptive practices, whereas section 9 grants essentially the same entitlement to aggrieved consumers. Withal, section 11 affords no relief to consumers and, conversely, section 9 affords no relief to persons engaged in trade or commerce. See Employers Ins. of Wausau v. George, 673 N.E.2d. 572, 579 (Mass. App. Ct. 1996); DiVenuti v. Reardon, 637 N.E.2d 234, 239 (Mass. App. Ct. 1994).

Viewed in this light, Bahnan's asseveration that the district court mistakenly pretermitted his section 9 claims depends on how he is classified. The district court concluded, as a matter of law, that Bahnan's ownership of the Mott St.

-13-

property constituted an engagement in trade or commerce.  See Bahnan I, slip op. at 9-10.  We agree with this taxonomy.

The undisputed facts show that Bahnan rented out the subject property, and that he himself lived elsewhere. Moreover, he applied for and received a business owner's policy, and in the process completed a commercial insurance application in which he described his business as "apartments."  That ends the matter:  as used in chapter 93A, "trade or commerce" specifically includes "the offering for sale, rent or lease [and] the sale, rent, lease or distribution of any . . . property."  Mass. Gen. Laws ch. 93A, § 1(b).  It follows inexorably that the district court appropriately closed the door on Bahnan's section 9 counterclaims.  See Linthicum v. Archambault, 398 N.E.2d 482, 487 (Mass. 1979) (holding that "a person who rents real property is engaged in 'trade' or 'commerce'").

**Sixth:** Relatedly, Bahnan protests the district court's adverse ruling on a counterclaim that invoked an unfair claim settlement practices statute, Mass. Gen. Laws ch. 176D.  The district court jettisoned this counterclaim at the summary judgment stage, declaring that "[c]hapter 176D . . . does not create a private right of action for individuals injured by such practices."  Bahnan I, slip op. at 7.  The correctness of that

-14-

ruling cannot seriously be questioned.  See Andrews-Clarke v. Travelers Ins. Co., 984 F. Supp. 49, 53 & n.20 (D. Mass. 1997); Mahaney v. John Hancock Mut. Life Ins. Co., 380 N.E.2d 140, 142 (Mass. App. Ct. 1978); see also Pariseau v. Albany Int'l Corp., 822 F. Supp. 843, 845 (D. Mass. 1993).

Bahnan's fallback position is that a violation of chapter 176D sometimes may translate into a violation of chapter 93A (which does create private rights of action).  This is true as far as it goes — but it does not go far enough to do Bahnan any good.  A violation of chapter 176D may form the predicate for a cause of action under section 9 of chapter 93A, but not under section 11.  See Transamerica Ins. Group v. Turner Constr. Co., 601 N.E.2d 473, 477 (Mass. App. Ct. 1992).  Since Bahnan's access to chapter 93A is limited to section 11, see supra, he cannot maintain a derivative chapter 176D claim.  See Polaroid Corp. v. Travelers Indem. Corp., 610 N.E.2d 912, 917 (Mass. 1993); Transamerica, 601 N.E.2d at 477.

**Seventh**:  Bahnan has one more shot in his sling.  He asserts that, in Bahnan II, the district court should have regarded Continental's supposed infractions of chapter 176D as per se violations of chapter 93A or otherwise treated them "favorably" (whatever that may mean).  The case law refutes this assertion.  There is no one-to-one relationship between chapter 176D and chapter 93A.  After all, violations of chapter 176D run the gamut from those that are somewhat technical to those that

-15-

are gravely offensive.  Given this range, conduct that abridges the unfair claim practice statute may or may not abridge the unfair trade practice statute.  See F.C.I. Realty Trust v. Aetna Cas. & Sur. Co., 906 F. Supp. 30, 32 n.1 (D. Mass. 1995); Kiewit Constr. Co. v. Westchester Fire Ins. Co., 878 F. Supp. 298, 301-02 (D. Mass. 1995); Employers Ins. of Wausau, 673 N.E.2d at 579.

In all events, it is unnecessary to pursue this point. The district court, which saw and heard the witnesses, concluded that Continental had not sailed too close to the chapter 176D winds; to the contrary, the company "conducted a reasonable and timely investigation before refusing to pay Bahnan's fire loss claim."  Bahnan II, slip op. at 7.  We review the court's findings of fact in a jury-waived trial only for clear error. See Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990).  This standard extends to whether a particular act or series of acts, analyzed in context, are unfair or deceptive within the purview of chapter 93A.  See Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996).[4]  We are persuaded here, on whole-record review, that the court's finding that Continental satisfied the imperatives of chapter 176D was amply supported by competent and credible evidence.  So, too, were the court's

_____

[4]In this instance, Continental says that its conduct did not implicate chapter 93A as a matter of law.  Defining the outer boundaries of what may qualify for consideration as a breach of chapter 93A presents a question of law, thus engendering plenary review.  See Ahern, 85 F.3d at 797.  We need not conduct such review here, as the district court's ruling is sustainable as a matter of fact.

fairness determinations under chapter 93A.  We need go no further.


**Affirmed**.