# United States Court of Appeals
## For the First Circuit

No. 09-1156

FEDERAL INSURANCE COMPANY,
as subrogee of Berkshire Health Systems, Inc.,

Plaintiff, Appellant,

v.

COMMERCE INSURANCE COMPANY, ESTATE OF LUCIA A. ROBERTS
and KITTY HOWARD, as Trustee of the D. EVOR ROBERTS
and LUCIA A. ROBERTS REVOCABLE TRUST,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Kenneth P. Neiman, U.S. Magistrate Judge]

Before

Torruella, Boudin, and Howard,
Circuit Judges.

Mark J. Albano, with whom Dalsey, Ferrara & Albano, was on
brief for appellant.
Eric S. Goldman, with whom Byrne & Drechsler, L.L.P., was on
brief for appellees.

March 3, 2010

**TORRUELLA**, **Circuit Judge**.    In this appeal, based on diversity jurisdiction, appellant Federal Insurance Company ("Federal"), the insurer of Berkshire Retirement Community, Inc. ("Berkshire Retirement"), challenges the district court's decision to grant summary judgment on its subrogation claim in favor of defendants Commerce Insurance Company ("Commerce") and the Estate of Lucia A. Roberts ("Roberts").

After Federal had reimbursed Berkshire Retirement for its loss from a fire negligently started by Roberts, Federal sued in the U.S. District Court of Massachusetts, arguing that the implied coinsured doctrine did not bar its subrogation claim against defendants.  The district court granted summary judgment in favor of the defendants, and Federal now appeals.  After careful consideration, we affirm the district court's judgment.

## I.  Background

On April 4, 2007, Roberts, an elderly resident, negligently started a fire in her unit at the Kimball Farms retirement community, which is owned by Berkshire Retirement.  The fire damaged Berkshire Retirement's property, and Federal, which had insured Berkshire Retirement, reimbursed Berkshire Retirement over $75,000 for its loss.  Roberts had her own individual liability policy provided by Commerce.

When Roberts first moved to Berkshire Retirement's Kimball Farms in 1999, she signed the Residence and Care Agreement

-2-

("RCA"), which both parties characterize as a lease. The RCA is at the core of this dispute. In addition to accommodations, dining, medical, and housekeeping services, Article VIII, § B, entitled "Responsibility for Damages," of the RCA provided, in relevant part, as follows:

> Any loss or damage to the real or personal property owned by KIMBALL FARMS caused by the negligence of RESIDENT will be charged to and paid for by RESIDENT. If any negligence of anyone other than KIMBALL FARMS or its personnel results in injury, illness, or damage to RESIDENT or to RESIDENT'S personal property, RESIDENT hereby releases and discharges KIMBALL FARMS from all liability or responsibility for such injury or damage to RESIDENT'S personal property. RESIDENT shall have the responsibility of providing any insurance desired to protect against such loss.

Federal, as a subrogee of Berkshire Retirement, paid Berkshire Retirement for its loss from the fire and filed suit against the estate of Roberts and against Commerce in the district court, claiming that this provision in the RCA, along with other evidence, provided an exception to the Massachusetts implied coinsured doctrine, which otherwise would protect defendants from reimbursing Federal for its loss from a negligently started fire.[1] The parties filed cross-motions for summary judgment. On

---

[1] The implied coinsured doctrine provides that the landlord's liability insurance is held "for the mutual benefit of both parties," that is landlord and tenant, unless an express provision states otherwise. Seaco Ins. Co. v. Barbosa, 761 N.E.2d 946, 948 (Mass. 2002).

-3-

November 6, 2008, the district court granted summary judgment in favor of defendants after it determined that the implied coinsured doctrine controlled the outcome in this case and precluded Federal from pursuing a subrogation claim against defendants.

The district court held that under the Massachusetts Supreme Judicial Court's ("SJC") decision in Peterson v. Silva, the exception to the implied coinsured doctrine would apply only if the resident's lease expressly provided for a "tenant's liability for loss from a negligently started fire." 704 N.E.2d 1163, 1165 (Mass. 1999). Thus, because the RCA did not specifically impose liability on residents for fire damage, the exception to the implied coinsured doctrine did not apply. The district court barred the subrogation claim and held that the fact that Roberts had chosen to purchase her own liability insurance was irrelevant to the application of the implied coinsured doctrine.

Federal now appeals.

## II. Discussion

### A. Standard of Review

We review a district court's grant of summary judgment de novo. Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009). "We will affirm entry of summary judgment if the record -- viewed in the light most favorable to the nonmoving party, including all reasonable inferences drawn in favor of the nonmoving party -- discloses no genuine issue of material fact, and the

-4-

moving party is entitled to judgment as a matter of law." <u>Kunelius</u> v. <u>Town of Stow</u>, 588 F.3d 1, 8-9 (1st Cir. 2009).

## B. Applicable Law

### 1. Lease Interpretation

If the terms of a contract are unambiguous, then it must be enforced according to those terms in accordance with their ordinary and usual sense.[2] <u>See</u> <u>Bukuras</u> v. <u>Mueller Group, LLC</u>, No. 08-2160, 2010 WL 175085, at *5 (1st Cir. Jan. 20, 2010); <u>Cady</u> v. <u>Marcella</u>, 729 N.E.2d 1125, 1129-30 (Mass. App. Ct. 2000). However, if an ambiguity exists, and the court is called to interpret it, we must avoid "constructions that render contract terms meaningless." <u>Summit Packaging Sys., Inc.</u> v. <u>Kenyon & Kenyon</u>, 273 F.3d 9, 12 (1st Cir. 2001); <u>see also</u> <u>Lexington Ins. Co.</u> v. <u>All Regions Chem. Labs, Inc.</u>, 647 N.E.2d 399, 400 (Mass. 1995). Furthermore, "ambiguous terms are usually to be construed against the drafter." <u>Nadherny</u> v. <u>Roseland Prop. Co.</u>, 390 F.3d 44, 49 (1st Cir. 2004); <u>see also</u> <u>Air Plum Island, Inc.</u> v. <u>Soc'y For Preservation of New England Antiquities</u>, 873 N.E.2d 1159, 1165 (Mass. App. Ct. 2007).

### 2. The Implied Coinsured Doctrine

In insurance matters, a subrogation claim sometimes allows an insurer to recover what it pays to an insured under a policy, even in the absence of an express provision for such a claim, by standing in the shoes of the insured and suing the

---

[2] Massachusetts law governs construction of the lease.

wrongdoer.[3] See Frost v. Porter Leasing Corp., 436 N.E.2d 387, 389 (Mass. 1982).

Massachusetts, however, in cases involving subrogated claims against residential tenants, has departed "from the common-law principle that a person is liable for his own negligent acts, absent an express agreement to the contrary." Seaco, 761 N.E.2d at 948. In Peterson, the SJC interpreted the terms of the lease to determine whether the parties intended that the negligent tenant be relieved of liability for fire damage and found that the landlord and tenant were coinsureds, thereby defeating the insurer's subrogation claim. See 704 N.E.2d at 1166. The SJC's approach to the implied coinsured doctrine differs from other jurisdictions and creates a presumption that the tenant is an implied coinsured when a landlord fails to make explicit in its lease that the tenant needs to obtain its own insurance to cover the landlord's property in case of a negligently started fire.[4]

---

[3] Subrogation is an equitable doctrine that is based on a theory of restitution and unjust enrichment, where the party who paid for the loss is made whole by being able to collect that debt from the wrongdoer. See Money Store/Mass., Inc. v. Hingham Mut. Fire Ins. Co., 708 N.E.2d 687, 691 (Mass. App. Ct. 1999).

[4] This doctrine was acknowledged in Alaska Insurance Co. v. RCA Alaska Communications, Inc., where the court denied the landlord and its subrogee the right to pursue damage actions against negligent tenant when the lease required the landlord to carry fire insurance on the property. 623 P.2d 1216, 1218 (Alaska 1981). As this doctrine developed in Massachusetts, the SJC in Peterson explained that the landlord has to make explicit the tenant's obligation to obtain property insurance and concluded that a landlord's insurer may not pursue a subrogation claim against a

The SJC developed its approach through a trilogy of key cases. In <u>Lumber Mutual Insurance Co.</u> v. <u>Zoltek Corp.</u>, the SJC held, in a commercial setting, that based on the language of the lease together with an accompanying letter in which the landlord informed the tenant that the tenant need not carry insurance because of his contribution to the premium, tenant would be treated as an implied coinsured of the landlord, and thus landlord's insurer could not pursue subrogation claim against tenant for a loss from a negligently started fire. 647 N.E.2d 395, 396 (Mass. 1995). In <u>Lexington</u>, the SJC held that based on a "yield-up" clause[5] alone, the commercial tenants were exempt from liability to the landlord and landlord's fire insurance carrier for negligent fire damage. 647 N.E.2d at 400. In <u>Peterson</u>, the SJC found, despite a general residential lease provision requiring the tenants to indemnify the landlord for their "carelessness, neglect[,] or improper conduct," that "absent an express provision in a lease establishing a tenant's liability for loss from a negligently started fire, the landlord's insurance is deemed held for the

tenant unless there is an express provision to the contrary. 704 N.E.2d at 1165.

[5] A "yield-up" clause is a provision in a lease which states that the tenant must peaceably vacate the premises and leave them in a good state of repair at the end of the lease term. For example, in <u>Lexington</u>, the "yield-up" clause provided that at the expiration of the lease tenants will "peaceably yield up the Demised Premises . . . in the same condition and repair as the same were in at the commencement of the term[,] . . . damage by fire or other casualty . . . only excepted." 647 N.E.2d at 400.

mutual benefit of both parties." 704 N.E.2d at 1165. Thus, the tenant stands in the shoes of the insured landlord for the purpose of defeating the insurer's subrogation claim. See id.

### C. Application

In this appeal, Federal argues that the "Responsibility for Damages" provision of the RCA, unlike the provision in Peterson, unequivocally establishes tenant liability for any loss or damage to the real or personal property of Kimball Farms caused by the negligence of the tenant. Federal emphasizes that the RCA requires the tenant to obtain insurance. While Federal acknowledges that the last sentence of the provision granted some discretion to Roberts about her choice of insurers, Federal argues that the RCA did not state that Berkshire Retirement would provide coverage for a fire on the premises that Roberts may have negligently caused or that part of the rent would be allocated to insurance coverage.

In our view, even drawing all reasonable inferences in Federal's favor, we find that the Massachusetts coinsured doctrine applies and that the landlord's insurance in this case was held for the mutual benefit of both parties.

In applying the Massachusetts coinsured doctrine, we first must determine whether the RCA is a residential lease[6] and,

---

[6] In Commercial Union Insurance Co. v. North American Paper Co., the district court interpreted Lumber, Peterson, and Lexington to suggest that the implied coinsured doctrine should be applied even

second, whether the Peterson exception applies.  "[A] residential lease is a contract between a landlord and a tenant . . . [where] landlord promises to provide and maintain residential premises in a habitable condition," and the tenant "promises to pay the agreed upon rent for the habitable premises."  Jablonski v. Casey, 835 N.E.2d 615, 618 (Mass. App. Ct. 2005).  According to the "Preliminary Statement" of the RCA, Kimball Farms provides for its tenants, in consideration for rent, "comfortable living accommodations and associated facilities, services[,] and amenities, together with certain medical and nursing care facilities."  We agree with the district court, and both parties appear to agree, that the RCA is clearly a residential lease, which, in addition to accommodations, included other services and amenities, and not a commercial lease, which is "[a] lease for business purposes."  Black's Law Dictionary (8th ed. 2004).  Based on the reasoning underlying the decision to apply Peterson only to residential leases, which is the lack of sophistication and the reasonable expectations of the residential tenants, we are even more inclined to find that the lease for this retirement community for elderly residents is a residential lease.  See Seaco, 761 N.E.2d at 949-50.

---

in commercial settings.  138 F. Supp. 2d 222, 226-27 (D. Mass. 2001).  However, a later decision, Seaco, did not extend "the rule of Peterson v. Silva . . . to commercial tenancies," noting that commercial tenants tend to be more sophisticated than residential tenants.  761 N.E.2d at 950-51.

Next, we must determine whether the Peterson exception applies, that is whether in this case there is "an express provision in the lease establishing a tenant's liability for loss from a negligently started fire." 704 N.E.2d at 1165. While recognizing that the lease in Peterson is not identical to the lease in the instant case, we are persuaded that the reasoning in Peterson is equally applicable here.

In a residential lease case with multiple unit dwellings, it would be an undue hardship to require all tenants to insure against their own negligence when they are paying, through their rent or, in Roberts' case, a monthly service fee, for the fire insurance which covers the premises in favor of the landlord. In this retirement community case, the elderly Roberts could reasonably expect that Kimball Farms, which could establish its adjustable monthly service fee based on the insurance premium, would provide fire protection for the building. In this regard, as the SJC noted in Peterson:

> Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy.

Peterson, 704 N.E.2d at 1165 (quoting Sutton v. Jondahl, 532 P.2d 478, 482 (Okla. Ct. App. 1975)).

In Seaco, the SJC also considered, as an important factor in a residential tenancy, "the insurable interest that the landlord and the tenant each had in the premises, and the common business practice of passing insurance premium costs along to tenants when determining rental rates such that the tenant pays that portion of the premium that is attributable to the rented premises." 761 N.E.2d at 949 (quoting Sutton, 532 P.2d at 482). We agree that in the case of a retirement community, which provides more services than a residential apartment building in Peterson, it is not in the public interest to require all of the senior residents to insure Kimball Farms, causing the building to be fully insured by each resident and by the landlord. If this is what Berkshire Retirement intended, it needed to be crystal clear in requiring that tenants maintain fire insurance; otherwise, the tenants could reasonably expect that their monthly service fee included Berkshire Retirement's cost for fire insurance.

The language of the lease in this case is general, and although the first sentence mentions specific liability for damages caused by the resident to the real and personal property owned by Kimball Farms, there is no express language establishing liability for fire damages, as required by Peterson. Commerce argues that since the "Responsibility for Damages" provision does not

-11-

specifically reference insurance for fire loss, it does not support Federal's conclusion that this provision falls under the Peterson exception and establishes a tenant's liability.

The sentence requiring insurance, which does not mention fire, is inartfully drawn and could imply that the tenants are liable only for losses to their personal property, and that Berkshire Retirement is responsible for all other property damage. Ultimately, the insurance clause, similarly to the first sentence, does not reference fire liability, and to the extent that there is any ambiguity, the lease must be strictly construed against the drafter. This conclusion is supported by the clear drafting of the other insurance provisions of the lease. The clauses dealing with insurance specifically mention other required insurance, including health and automobile insurance, but not fire insurance.

While this is a strict approach, the SJC in Peterson emphasized the burden on the landlord to make explicit the tenant's obligation to maintain fire insurance, stating that the landlord could have but did not "insist[ ] that the [tenants] maintain fire insurance." 704 N.E.2d at 1166. In this case, Kimball Farms could have insisted in the lease that the residents maintain fire insurance covering real property, in addition to the required auto and health insurance.

### III.  <u>Conclusion</u>

We are not persuaded that Federal has met its burden of proving that the "Responsibility for Damages" provision of the RCA overcomes the presumption that the landlord's insurance is held for the mutual benefit of both parties.  For the reasons stated above, then, we affirm the district court's grant of defendants' motion for summary judgment barring Federal's subrogation claim.

**<u>Affirmed</u>**.