MUTUAL FIRE INSURANCE COMPANY *v.* JESSE
G. DILWORTH ET AL.
[No. 40, April Term, 1934.]

*Decided June 13th, 1934.*

The cause was argued before BOND, C.J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Douglass D. Storey,* with whom was *Elmer R. Haile* on the brief, for the appellant.

*J. Fletcher H. Gorsuch, Jr.,* and *Daniel S. Sullivan,* for the appellees.

DIGGES, J., delivered the opinion of the Court.

The appellees in this case, Jesse G. Dilworth and Eliza C. Dilworth, are the holders of a second mortgage in the amount of $4,500 on a farm belonging to John R. Seymour, located in Baltimore County. This mortgage was dated October 1st, 1924, and duly recorded among the land records of said county. At the time of the execution of the mortgage, there existed a prior or first lien upon the property mortgaged, a mortgage in the sum of $7,500, originally given to George Klausmeier and Annie Mary Klausmeier, his wife, dated April 12th, 1924, and also duly recorded among the aforesaid land records. On November 17th, 1931, Annie Mary Klausmeier, the wife, died, and George Klausmeier, as the survivor, became the sole owner of this mortgage. The mortgaged property was improved by a dwelling house, tenant house, barn, and other outbuildings.

On October 1st, 1931, the appellant, the Mutual Fire Insurance Company in Harford County, hereinafter referred to as the insurance company, issued its policy of fire insurance to Seymour, the owner, in the total amount of $12,400, apportioned according to the schedule contained in the policy as follows: $6,000 on two-story frame dwelling, $3,000 on a shingle-roof frame barn, $1,500 on metal roof frame tenant dwelling, $1.500 on composition and metal roof frame wagon shed, garage, and chicken house, and $400 on slate roof frame granary. There was attached to and forming a part of the insurance policy the New York standard mortgagee clause with full contribution. This clause is as follows:

"Loss or damage, if any, under this policy, shall be payable to George and Annie Klausmeier, first, and Jesse G. and Eliza C. Dilworth, second mortgagee, as interest may appear, and this insurance, as to the in-

terest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises, for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall on demand pay the same. * * * Whenever this company shall pay the mortgagee any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage with interest and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no such subrogation shall impair the right of the mortgagee to recover the full amount of their claim."

The term of this policy was five years from its date; and the premium was paid, amounting to $57.75.

On February 25th, 1932, the house, insured for $6,000, was totally destroyed by fire, and on February 27th the barn, insured for $3,000, and granary, insured for $400, were also totally destroyed by fire. Due proofs of loss were furnished the insurance company, as required by the contract. There was also a provision in the policy that, in case the parties were unable to agree as to the actual value of the buildings destroyed, the amount should be ascertained and fixed by arbitration. Being unable to agree, that procedure was resorted to, and the value of the property destroyed was fixed by the arbitrators to be an amount which, after deducting the sum of $7,011.50

paid to the first mortgagee, and after further deducting all allowances to which the insurance company was entitled under the policy, allowed as the net sum due to the second mortgagees the amount of $800.67.

The insurance company claimed non-liability as to the mortgagor or owner, and, after paying to the first mortgagee the amount then due on that mortgage, claimed subrogation thereto, and on July 21st, 1932, received from the first mortgagee an assignment of the first mortgage. The insurance company then tendered to the second mortgagees the sum of $800.67 in full settlement of all liability to them under the policy. The second mortgagees refused to accept the tender, and claimed that the subrogation and assignment of the first mortgage to the insurance company did not result in the insurance company holding the first mortgage as a prior lien to the second mortgage. In other words, the contention of the appellees is that the insurance company was subrogated to the rights of the first mortgagee as against the owner of the property, but that its claim under the subrogation was second or inferior to the second mortgage, which, in so far as regards the respective rights of the insurance company and the second mortgagee, became in effect a first mortgage upon the property. The lower court accepted this view, and adjudged, ordered, and decreed that the mortgage in these proceedings mentioned, dated October 1st, 1924, from John R. Seymour and wife to the appellees, "shall be and is hereby declared to be a lien on the property in these proceedings mentioned and in said mortgage described superior and prior to the lien of the mortgage dated April 12th, 1924," assigned by George Klausmeier to the insurance company. The appeal is from that decree.

A proper decision as to the priority as liens upon the property depends upon the construction of the insurance policy, and particularly upon the mortgagee clause. At the time of the issuance of the policy and the attachment of the mortgagee clause, both mortgages were in full force; the one held by Klausmeier and wife being the first mortgage, and the one held by the appellees being the second

mortgage. The mortgagee clause specifically provides that loss or damage, if any, under this policy shall be payable to George and Annie Klausmeier, first, and Jesse G. and Eliza C. Dilworth, second mortgagee, as interest may appear, thereby making those holding both first and second mortgages beneficiaries under the policy; and then further provides: "This insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property." This clause in terms provided that acts or neglect by the owner or mortgagor of the property, which under its terms would invalidate the insurance as to him and preclude him from any recovery, should not have that effect as against the claim of the mortgagees. It placed the mortgagees in a much more advantageous position, in case of loss by fire, than the owner or mortgagor would be. The word "mortgagee" (singular) is used throughout the clause, but there can be no doubt that the provisions of the clause did apply and were intended to apply to all the mortgagees. This intention is clearly shown by naming four persons or mortgagees; and it is apparent that the singular term "mortgagee" was used because the form was printed in the singular, and through inadvertence or neglect it was not corrected to the plural. Neither do we find any contention by the parties that the construction here placed upon it was not in accordance with the manifest intent of the parties. The mortgagee clause further provides: "Whenever this company shall pay the mortgagee any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall to the extent of such payment be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage with interest and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no such subrogation shall impair the right of the

mortgagee to recover the full amount of their claim."

There is no decision by this court wherein the facts are the same as those disclosed by this record; nor does it appear, as a result of the labor of counsel, or of our independent investigation, that there are any reported cases decisive of the question here raised, with the exception of the case of *Perretta v. St. Paul Fire & Marine Ins. Co.*, 106 Misc. 91, 174 N. Y. S. 131. In this case there was an opinion rendered in the lower court, which was affirmed by the Supreme Court, Appellate Division, without a written opinion, in 188 App. Div. 983, 177 N. Y. S. 923. There is also a statement in 26 *C. J.* 463, sec. 626, wherein it is said: "Under some policies the insurer's paying the loss and taking an assignment of the first mortgage makes such mortgage inferior to a second mortgage." The author of that statement relies upon the *Perretta* case as authority. There are, however, decisions of this court fixing and setting forth general principles which are in a measure applicable to the facts here: among which are *Frontier Mortgage Corp. v. Heft,* 146 Md. 1, 125 A. 772, and *Grangers' Mutual Fire Ins. Co. v. Farmers' Nat. Bank,* 164 Md. 441, 165 A. 185, and cases there cited. With this apparent dearth of authority, we will endeavor to construe the terms of the contract in accordance with what was the apparent intent of the parties, and in accordance with what we conceive to be the equities of the case. After doing so, we find our conclusion to be in accord with that reached by the learned chancellor, and the decree will be affirmed.

There would seem to be two provisions contained in the mortgage clause which prohibit the result contended for by the appellant. The first of these is that no act or neglect of the mortgagor or owner shall invalidate the interest of Jesse G. and Eliza C. Dilworth, second mortgagees, as their interest may appear. This language is unambiguous; and if the claim for preference of lien made by the insurance company as to the first mortgage is well founded, it must be because of an act of the mortgagor-owner, which invalidated the policy as to him, and

which permitted the insurance company to validly claim non-liability as to the mortgagor and owner. By the terms of the clause under consideration, the insurance company only becomes entitled to be subrogated, and to have an assignment of the first mortgage, upon its payment, if and when the owner is guilty of some act or neglect which entitles the insurance company to claim non-liability as to him. It follows that this act or neglect is the basis for the insurance company's claim to a preference over the appellees, the allowance of which would be in the teeth of the provision of the clause which provides that no act or neglect of the mortgagor or owner shall in validate the interest of the appellees, they being mortgagees. Again, the subrogation clause, after providing the facts and circumstances under which subrogation may be claimed, provides that no such subrogation shall impair the right of the mortgagee to recover the full amount of their claim. The second mortgagees were as certainly protected under the terms of the policy as the first mortgagee; and the policy issued by the insurance company afforded that protection.

The record discloses that the two mortgages aggregated $12,000 and were both placed upon the property at a time when the buildings had not been destroyed. The insurance, to the value of the buildings, plus the value of the land covered by the mortgages, was sufficient to pay both in full; whereas if the insurance be allowed to be used in full settlement of the claim of the first mortgagee, and the insurance company be given priority by reason of the subrogation, it would result in the requirement that the property, without the buildings, should bring a sufficient amount to settle both mortgages, less $800, or else the right of the second mortgagees would certainly be impaired. This would mean that the property would have to sell for $10,700, plus interest on both mortgages and costs of foreclosure; and this sum would have to be obtained from the sale of property which, according to the uncontradicted and only evidence in the record on that point, is liberally appraised as being worth $5,350. It is

therefore undoubtedly true that the subrogation to the rights of the first mortgagee by the insurance company would result in the impairment of the right of the second mortgagees to recover the full amount of their claim, which result the insurance company has in terms contracted against.

The logical, true, and equitable construction of the terms of this contract is that the insurance company, upon the payment to the first mortgagee, is subrogated to the rights of the first mortgagee, as against the mortgagor or owner, but not as against the second mortgagees. Any other construction, in our opinion, would not be equitable, resulting as it would in no loss whatever to the insurance company, and impairment, if not a total destruction, of the value of the second mortgage, which, as heretofore several times stated, the insurance company contracted should not be invalidated or impaired by any act of the mortgagor or owner, or any subrogation or assignment by the first mortgagee to it.

Our conclusion is in accord with the result and reasoning in the New York case of *Perretta v. Insurance Co., supra;* and while it is true that the decision in that case was not by a court of final resort, it is the only decision to which our attention has been called wherein the precise question has been passed upon.

*Decree affirmed, with costs to the appellees.*