## THE MONEY STORE/MASSACHUSETTS, INC. *vs.* HINGHAM MUTUAL FIRE INSURANCE COMPANY & another.[1]

Middlesex. October 4, 1999. - November 1, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Insurance,* Homeowner's insurance, Construction of policy, Mortgagee's inter-
est, Subrogation. *Contract,* Insurance, Construction of contract. *Mortgage,*
Foreclosure, Priority. *Subrogation. Assignment.*

Under the unambiguous terms of a standard policy of homeowner's insurance,
the nonimpairment provision relating to subrogation of claims did not ap-
ply in circumstances in which the insurer paid the first mortgage, took an
assignment of the mortgagee's rights, and conducted a foreclosure sale of
the property [301-302], with the result that the insurer under such an as-
signment had no obligation to pay a second mortgagee the net proceeds of
the foreclosure sale on the first mortgage [302-304].

CIVIL ACTION commenced in the Superior Court Department on
June 3, 1994.

The case was heard by *Sandra L. Hamlin,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Ethan Warren* for Hingham Mutual Fire Insurance Company.

*Robert H. Greene* for the plaintiff.

*Norman J. Guz, Jr.,* for Chicopee Savings Bank, submitted a
brief.

*Alice Olsen Mann,* for Alliance of American Insurers, amicus
curiae, submitted a brief.

GREANEY, J. We granted an application of Hingham Mutual
Fire Insurance Company (Hingham Mutual) for further appel-
late review in this case. The Appeals Court affirmed a judgment
of the Superior Court and held that Hingham Mutual, the home-
owner's insurer of residential property that had incurred fire
damage as a result of the wrongful act of the owner, was

---

[1]Chicopee Savings Bank. The action was dismissed against Chicopee Sav-
ings Bank and no relief was ordered in the judgment.

obligated to pay the second mortgagee, the Money Store/ Massachusetts, Inc. (Money Store), the net proceeds that Hingham Mutual obtained from the foreclosure sale of the first mortgage. *Money Store/Mass., Inc.* v. *Hingham Mut. Fire Ins. Co.*, 46 Mass. App. Ct. 636, 642 (1999). Hingham Mutual conducted the sale after it paid the first mortgagee, Chicopee Savings Bank (Chicopee), and received an assignment of Chicopee's mortgage. We conclude, based on the unambiguous provisions of the insurance policy, that Hingham Mutual, by reason of Chicopee's assignment of its first mortgage, acquired all the rights held by Chicopee; and that Hingham Mutual's foreclosure eliminated the interest of the Money Store. Accordingly, we vacate the judgment and direct the entry of a judgment declaring that Hingham Mutual owes nothing to the Money Store.

The background of the case may be summarized as follows. Krystyna Matsunaga owned residential property in Springfield which was subject to a first mortgage to Chicopee and a second mortgage to the Money Store. Hingham Mutual insured the property under a standard homeowner's insurance policy with the two mortgages noted on the declarations page in the order of their priority, Chicopee as the first lien, and the Money Store as the junior lien. Matsunaga intentionally damaged the property by setting off an explosion. Hingham Mutual properly refused to pay Matsunaga because of her wrongful act. Hingham Mutual determined that the actual cash value of the loss was $40,648.40, and it paid Chicopee $40,600, the full amount owed Chicopee on its first mortgage.[2] In accordance with the terms of its policy, Hingham Mutual received an assignment of Chicopee's first mortgage.

Hingham Mutual, as assignee of Chicopee's rights, conducted a foreclosure sale of the property. The Money Store was represented at the sale, but did not bid. Hingham Mutual purchased the property at the foreclosure sale and eventually resold it to a third party. The foreclosure and resale netted Hingham Mutual $21,558. The Money Store did not make a formal claim for damages against Hingham Mutual.

The Money Store filed a complaint in the Superior Court against Hingham Mutual and Chicopee asserting that Hingham

[2]By reason of G. L. c. 175, § 99, an owner's wrongful conduct does not cut off the rights of mortgagees to claim against the mortgagee loss payable clause of a fire insurance policy.

Mutual could not affect the Money Store's mortgage by exercise of its assignment rights and requesting that Hingham Mutual pay damages. A judge in the Superior Court concluded that the Money Store should prevail, and she ordered the Money Store to recover the $21,558 in net proceeds received by Hingham Mutual from the foreclosure sale with that sum to be applied to the Money Store's mortgage debt. The Appeals Court affirmed the judgment incorporating the judge's order.

1. Hingham Mutual's policy is a standard form homeowner's insurance policy issued in accordance with G. L. c. 175, § 99, Twelfth. The pertinent provisions of the policy appear in a section entitled "Mortgage Clause," and read as follows:

> "If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages . . . .

> "If we pay the mortgagee for any loss and deny payment to you:

> "a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

> "b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

> "Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim."

These provisions, if unambiguous, are to be construed according to their plain meaning. *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, 420 Mass. 422, 427 (1995). *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453 (1985). "This is consistent with our long-standing policy that the rules governing the interpretation of insurance contracts are the same as those governing the interpretation of any other contract." *Id.*, and cases cited. We also keep in mind in considering the application of the provisions to this case that the relevant policy language is the same,

or substantially the same, as mandated by the Legislature in G. L. c. 175, § 99, Twelfth.

There is nothing ambiguous in the provisions of Hingham Mutual's policy set forth above. The policy provisions recognize that the policy may provide coverage to multiple mortgagees ("If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages . . ."). The policy provisions do not provide for any rearrangement of the priorities of mortgagees, if a first mortgagee is paid before a junior mortgagee. The policy provisions expressly direct Hingham Mutual to pay any mortgagee named therein and, *at Hingham Mutual's option*, either to invoke that mortgagee's subrogation rights or upon payment to the mortgagee of all monies due to receive a full assignment and transfer of the satisfied mortgagee's rights. Hingham Mutual chose the second option (payment of all monies due Chicopee), and it received a full assignment of Chicopee's first mortgage. When Hingham Mutual exercised that option, the debt to Chicopee was not extinguished. See *Allen* v. *Watertown Fire Ins. Co.*, 132 Mass. 480, 483 (1882). See also *Neises* v. *Solomon State Bank*, 236 Kan. 767, 779-780 (1985); *Auto-Owners Mut. Ins. Co.* v. *Newman*, 851 S.W.2d 22, 27 (Mo. Ct. App. 1993); *Commercial St. Ins. Co.* v. *Hitson*, 73 N.M. 328, 333 (1963); *Northwest Farm Bur. Ins. Co.* v. *Althauser*, 90 Or. App. 13, 16-17 (1988). As a result of the assignment, Hingham Mutual succeeded to all the rights held by Chicopee to enforce the debt to it against the property (and to the detriment of junior liens) under the terms of the first mortgage.

Hingham Mutual was not required to exercise its rights as assignee only for the benefit of the Money Store. Hingham Mutual was insuring physical risks to the property and not the Money Store's mortgage and debt. The Money Store should have been aware of these facts. If any loss was payable to mortgagees under the policy, the Money Store was on notice that Chicopee stood first in order of preference, and payment in full to Chicopee allowed Hingham Mutual, as assignee, to exercise all of Chicopee's rights against the Money Store. Put differently, based on the policy language, the Money Store could harbor no reasonable expectation that Hingham Mutual's policy would fully protect the Money Store's security. See generally *East Boston Sav. Bank* v. *Ogan*, 428 Mass. 327, 331 (1998) ("A second mortgagee . . . accepts risks inherent in that security").

The nonimpairment provision in the policy, set forth above, does not alter this conclusion. That provision also is not ambiguous. It relates only to subrogation, and not to the assignment option, and no reference to subrogation is made in the assignment option.[3] Subrogation and assignment are not the functional equivalent of each other. The former speaks in terms of broader equitable rights and remedies. See *Frost* v. *Porter Leasing Corp.*, 386 Mass. 425, 426-427 (1982) ("Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss is entitled to recover from two sources . . ."); *Travelers Ins. Co.* v. *Graye*, 358 Mass. 238, 240 (1970), quoting Arnould, Marine Insurance § 1225 (14th ed.) ("Subrogation is an equitable arrangement incident to all contracts of indemnity and to all payments on account thereof"). Assignment is legal in nature and has an established meaning, discussed above, with respect to the rights of an assignee of a first mortgage.

2. As has been discussed, resolution of the controversy rests on an interpretation of the standard form homeowner's insurance policy provisions, specifically the assignment and subrogation provisions and the nonimpairment clause, in a multiple mortgagee setting. There is little case law on the issue raised in this case. Two courts have held that a junior mortgagee takes priority over an insurer that has paid the senior mortgagee the value of the mortgage and taken an assignment of that mortgage. See *Perretta* v. *St. Paul Fire & Marine Ins. Co.*, 106 Misc. 91, 100-101 (N.Y. Sup. Ct.), aff'd, 188 A.D. 983 (N.Y. 1919); *Mutual Fire Ins. Co.* v. *Dilworth*, 167 Md. 232, 239 (1934). We

---

[3]The interpretation that the nonimpairment provision applies only to the subrogation option requires no historical justification because its language speaks for itself. The interpretation is supported, however, by the language of the New York standard fire insurance policy on which the "Mortgage Clause" in Hingham Mutual's policy is based. The New York standard fire insurance policy was introduced in 1943, and was the forerunner of the present provision. See 3 S.A. Cozen, Insuring Real Property § 52.01, at 52-3 (1999). The original provision read as follows: "If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, *but without impairing mortgagee's right to sue*, or it may pay off the mortgage debt and require an assignment thereof and of the mortgage . . ." (emphasis supplied). *Id.* at § 52.04[1], at 52-17.

The intent of the nonimpairment language, then as now, relates only to the insurer's subrogation to the mortgagee's rights of recovery, the mortgagee's "right to sue." That language was not intended to modify the insurer's rights as an assignee of a mortgage.

are not persuaded by the reasoning of either decision. Both fail to distinguish adequately between the legal significance of assignment and subrogation, and they apply the nonimpairment clause, without explanation, to an assignment in a manner contrary to the unambiguous language of the insurance policies.

As a matter of policy, we also note that, if we were to follow the decisions in these cases, insurers might be reluctant to insure second mortgagees because the insurers would lose the option of paying the mortgage debt to the first mortgagee and taking an assignment of that mortgage to recoup their losses. This might lead to lending institutions not issuing second mortgages to homeowners.

The Appeals Court placed reliance on *Eddy* v. *London Assur. Corp.*, 143 N.Y. 311 (1894), and *First Fed. Sav. & Loan Ass'n* v. *Hartford Fire Ins. Co.*, 100 N.J. Super. 252 (1968). *Money Store/Mass., Inc.* v. *Hingham Mut. Fire Ins. Co.*, 46 Mass. App. Ct. 636, 641 (1999). These decisions are not helpful because both deal with a mortgage clause and a non-impairment provision in the context of a single mortgagee. The *First Federal* case, a short per curiam decision dealing with multiple insurance companies refusing to pay a single mortgagee after denying liability to the mortgagor, stands for the unremarkable proposition that under a mortgage clause an insurer's rights are subordinate to those of a single mortgagee, and the insurers are entitled to an assignment only if they pay the mortgage debt in full. *First Fed. Sav. & Loan Ass'n* v. *Hartford Fire Ins. Co.*, supra at 254-255. The *Eddy* case, in which a single mortgagee[4] began foreclosure proceedings on the property securing the mortgages, but did not complete the foreclosure until after fire had destroyed the premises and the insurance company had denied the claim as to the mortgagor, concludes that the mortgagee was not bound to stay foreclosure proceedings and accept insurance payments and assign its rights in the mortgages to the extent of such payments. *Eddy* v. *London Assur. Corp.*, supra at 320. These results may well be correct, but they do not have authoritative pertinence to this case.

3. We have considered the arguments made by the Money Store in support of its position. The Money Store's main contention is that, for a variety of reasons, Chicopee should have applied the money it received from Hingham Mutual to Matsunaga's mortgage debt. As discussed above, unambiguous

---

[4]The single mortgagee owned three separate mortgages on the property at issue.

provisions of the policy, and the Money Store's knowledge of the risks it assumed, do not support its position. As a practical matter, the Money Store's arguments, if adopted, would allow a wrongdoer like Matsunaga to benefit from her wrongdoing by having her mortgage debt reduced or extinguished.

4. The judgment is vacated. A new judgment is to be entered declaring that Hingham Mutual and Chicopee owe nothing to the Money Store.

*So ordered.*