STUART, Justice.
Thomas Elliott was injured when a tractor he was driving as part of his duties as a maintenance worker at the State-operated Confederate Memorial Park in Marbury (“the park”) tipped over and rolled on top of him. Following the accident, Elliott sued two of his fellow employees, Eric Wayne Montgomery and William Rambo, in the Chilton Circuit Court, alleging that his injuries were the result of their willful conduct in failing to install appropriate safeguards on the tractor. His wife, Maura Elliott, subsequently stated a derivative loss-of-consortium claim. The trial court thereafter entered a summary judgment in favor of Montgomery and Rambo and against the Elliotts; the Elliotts appeal. We reverse and remand.
I.
On September 6, 2006, Elliott was assigned to mow grass at the park. Elliott typically used a commercial-grade zero-turn lawn mower when mowing the grass; however, that mower was out of service on that day, and Montgomery, Elliott’s immediate supervisor, instructed him to use instead the John Deere brand 770 tractor owned by the park with a grooming mower attached to the back. Elliott had used this tractor on three or four occasions previously but never with the grooming mower attached; his previous use of the tractor had entailed cutting grass using the tractor’s underbelly mower or cutting away thicker brush and growth using a Bush Hog brand mowing attachment. Moreover, his previous experience driving the tractor had all been with a front-end loader attached to the tractor; however, that front-end loader had been removed on the day of the accident.
After getting on the tractor, Elliott drove it to the area of the park he had been assigned to mow and proceeded to mow for approximately 45 minutes before deciding that he needed to refuel. He then raised the grooming mower and began traveling to the mechanic shed where the fuel dispenser was located. The drive leading to the mechanic shed was sloped at approximately a 10% grade and there was a slope off the shoulder of the drive. As Elliott approached a locked gate, he maneuvered the tractor to the side of the drive to go around the gate, as was the employees’ custom. As he did so, the front tires of the tractor rose off of the ground and the tractor rolled back and off the side of an embankment, tipping over and causing injury to Elliott’s head, neck, and back as the tractor rolled over him. An engineer later retained by Elliott concluded that a primary cause of the accident was the failure to attach a proper ballast, *665 that is, stabilizing weights used as a safety device, to' the front of the tractor, stating in his initial report:
“It is my opinion that the overturning of this tractor, at this location, is a result of an absence of satisfactory ballast at the front of the tractor to prevent the upward movement of the front wheels of the tractor from the ground, when the grooming mower was in the lifted position, in combination with the travel direction of the tractor being upward on a steep slope and on a side slope off the shoulder of the drive. It is also my opinion that the absence of the narrow width of the front and rear wheels provided an unstable condition, perpendicular to the travel direction of the tractor. It appears that the loss of control of the steering, at the front of the tractor by the uplift, was a factor in the tractor moving down the slope at the side of the drive. This is a condition that, considering the size, weight, and ability for lateral movement of the grooming mower attached to the three point hitch, created the overturning condition. It is my opinion that this condition could have been prevented by traveling with the grooming mower in contact with the ground; the use of the proper ballast, at the front of the tractor and, to some less degree, the tractor being driven at the center of the drive rather than off the shoulder. It is my opinion that this failure occurred due to excessive loading and an unstable condition across the narrow width of the tractor.”
As a result of injuries suffered in the crash, Elliott sought and received benefits from the State Employee Injury Compensation Program (“the State program”).[1]
On August 26, 2008, Elliott initiated this action against his supervisor Montgomery and the director of the park, Rambo, alleging that his injuries were the result of their willful conduct. Rule 355-8-1-.02, Ala. Admin. Code (Department of Finance), provides:
“(b) By accepting benefits under this program the employee agrees to release the employer and its officers and employees, professional or corporate agents of the employer and employees thereof, from any liability, other than that arising from willful conduct, for the injuries suffered by the employee for which benefits maybe paid under this program. If an employee initiates a civil action against the employer or its officers or employees, or the employer’s professional or corporate agents or employees thereof, other than for willful conduct, benefits under this program will terminate. If the injured employee, or in case of death, his or her dependents, recover[ ] damages against another party, the amount of the damages recovered and collected shall be credited upon the liability of the employer for benefits. If the damages recovered and collected are in excess of the benefits payable under this chapter, there shall bé no further liability on the employer to pay benefits on account of the injury or death. To the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury -or death. If the employee who recovers damages is *666 receiving or entitled to receive compensation for permanent total disability, then the employer shall be entitled to reimbursement for the amount of benefits theretofore paid, and the employer’s obligation to pay further compensation for permanent total disability shall be suspended for the number of weeks which equals the quotient of the total damage[s] recovery, less the amount of any reimbursement for compensation already paid, divided by the amount of the weekly benefit for permanent total disability which the employee was receiving or to which the employee was entitled. The employer shall be entitled to subro-gation for benefits expended by the employer on behalf of the employee.
“(c) As used herein, ‘willful conduct’ means any of the following:
“(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of ‘willful conduct.’
“(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be -.willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.
“(3) The intoxication of another employee of the employer if the conduct of that employee has wrongfully and proximately caused injury or death to the
plaintiff or plaintiffs decedent, but no employee shall be guilty of willful conduct on account of the intoxication of another employee or another person.
“(4) Willful and intentional violation of a specific written safety rule of the employer after written notice to the violating employee by another employee who, within six months after the date of receipt of the written notice, suffers injury resulting in death or permanent total disability as a proximate result of the willful and intentional violation. The written notice to the violating employee shall state with specificity all of the following:
“(i) The identity of the violating employee.
“(ii) The specific written safety rule being violated and the manner of the violation.
“(iii) That the violating employee has repeatedly and continually violated the specific written safety rule referred to in b. [sic] above with specific reference to previous times, dates, and circumstances.
“(iv) That the violation places the notifying employee at risk of great injury or death.
“A notice that does not contain all of the above elements shall not be valid notice for purposes of this section. An employee shall not be liable for the willful conduct if the injured employee himself or herself violated a safety rule, or otherwise contributed to his or her own injury. No employee shall be deemed to have committed willful conduct for the violation of any safety rule by any other employee or for failing to prevent any violation by any other employee. In the event the employer has paid benefits to the employee or his or her dependent, or in the event the employer has received a claim for the payment of the benefits, a *667 civil action against a third party may be maintained either in the name of the injured employee, his or her dependent in case of death, the employer, or the insurance carrier. In the event the damages recovered in the civil action are in excess of the benefits payable by the employer under this chapter and cost, attorney’s fees, and reasonable expenses incurred by the employer in making the collection, the excess of the amount shall be held in trust for the injured employee or, in case of death, for the employee’s dependents.”
The gravamen of the Elliotts’ claims was that Montgomery and Rambo failed to provide and/or install a proper ballast on the front of the tractor with knowledge that the failure to do so would likely lead to injury. The Elliotts further argued that Montgomery’s and Rambo’s action or inaction in that regard was the equivalent of intentionally removing a safety guard or device, an action specifically designated as willful conduct in Rule 355 — 8—1—.02(c)(2); the Elliotts noted that this Court., has in-' terpreted § 25-5-11(c)(2), Ala.Code 1975, part of the workers’ compensation act that governs nongovernmental employees and uses an identical definition of “willful conduct” in precisely that manner. See Bailey v. Hogg, 547 So.2d 498, 500 (Ala.1989) (“We hold that the willful and intentional failure to install an available safety guard equates to the willful and intentional removal of a safety guard for the purposes of Ala.Code 1975, § 25-5-ll(c)(2).”).[2] Elliott’s wife, Maura, later added a derivative loss-of-consortium claim.
Montgomery and Rambo initially moved to dismiss the Elliotts’ complaint for failure to state a cause of action; however, after their motion was denied, they filed answers denying the general allegations of the Elliotts’ complaint. On June 17, 2009, after discovery had been completed, Montgomery and Rambo moved the trial court to enter a summary judgment in their favor, again - arguing that the Elliotts had failed to state a valid cause of action because, they argued, Rule 355-8-1-.02 did not authorize the Elliotts’ stated claims against them. The Elliotts filed a response opposing Montgomery and Rambo’s summary-judgment motion, and, after the Elliotts twice supplemented their response, Montgomery and Rambo filed a final reply.
On December 4, 2009, the trial court entered a summary judgment in favor of Montgomery and Rambo. In the summary-judgment order, the trial court recognized that administrative rules may sometimes provide the basis for a cause of action, see, e.g., Rule 420 — 3—23—.16(ll)(b), Ala. Admin. Code (Department of Public Health) (stating that “a person alleging a violation of Act 321-2000 [setting forth regulations applicable to tattoo and body-art facilities] may bring a civil action for appropriate injunctive relief’); yet, the trial, court noted, Rule 355-8-1-.02 had no language specifically authorizing a cause of action based on willfulness. The trial court further noted that § 25-5-ll(b), Ala. Code 1975, specifically authorized a cause of action based on willfulness in analogous situations involving nongovernmental employees and reasoned that because the clear intent to authorize a cause of action evident in other administrative rules and *668 in § 25-5-ll(b) was not present in Rule 355-8-1-.02, then, in fact, no cause of action based on willfulness was authorized by Rule 355-8-1-.02. See § 25-6-ll(b), Ala. Code 1975 (“If personal injury or death to any employee results from the willful conduct ... of any ... employee of the same employer ... the employee shall have a cause of action against the person.... ”). The Elliotts moved the trial court to alter, amend, or vacate its judgment; the trial court denied that motion, and the Elliotts filed their notice of appeal to this Court on April 6, 2010.
II.
The applicable standard of review was articulated by this Court in Continental National Indemnity Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005):
“An order granting or denying a sum-. mary judgment is reviewed de novo, applying the same standard as the trial court applied. American Gen. Life & Accident Ins. Co. v. Underwood, 886 So.2d 807, 811 (Ala.2004). In addition, ‘[t]his court reviews de novo a trial court’s interpretation of a statute, because only a question of law is presented.’ Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review. Carter v. City of Haleyville, 669 So.2d 812, 815 (Ala.1995). Here, in reviewing the [entry] of a summary judgment when the facts are undisputed, we review de novo the trial court’s interpretation of statutory language and our previous caselaw on a controlling question of law.”
III.
The Elliotts argue that the trial court’s interpretation of Rule 355-8-1-.02 is erroneous and that Rule 355-8-1-.02 does in fact authorize their claims against Montgomery and Rambo. In the event this Court upholds the trial court’s interpretation of Rule 355-8-1-.02, the Elliotts argue that the summary judgment entered by the trial court should nevertheless be reversed because, they argue, they should have been granted leave to amend their complaint. However, for the reasons that follow, we agree that Rule 355-8-1-.02 authorizes the Elliotts’ action; accordingly, we do not consider their alternate argument.
Rule 355-8-l-.02(b) indicates that an injured State employee receiving benefits under the State program will have his or her benefits terminated if the employee initiates an-action against his or her employer, its officers, its other employees, or its agents, for anything “other than for willful- conduct.” Thus, Rule 355-8-1-.02(b) clearly contemplates that an injured State employee might pursue a willfulness action against co-employees who the employee alleges are responsible for his or her injuries. Rule 355-8-l-.02(c) defines willful conduct “[a]s used herein,” that is, in Rule 355-8-1-.02, to include not only conduct done with the specific intent to injure, as the term is generally used in the common law, but also certain other conduct where the specific intent to injure is absent. Thus, Rule 355-8-1-.02 implicitly authorizes a cause of action by a State employee against co-employees based on willful conduct as that term is defined in Rule 355-8-l-.02(c).
Despite this holding, Montgomery and Rambo argue that this Court should nevertheless affirm the judgment entered by the trial court on other grounds. See, e.g., Tucker v. Nichols, 431 So.2d 1263, 1265 (Ala.1983) (stating that an appellate court “will affirm the judgment appealed from if *669 supported on any valid legal ground”). They first argue that Rule 355-8-1-.02 is invalid because, they allege, it violates § 36-29A-4, Ala.Code 1975, which provides that the State program to be developed and implemented by the director of finance “is not governed by or subject to the provisions of Act 92-537, or its successor, otherwise known as the Alabama Workers’ Compensation Law [codified at § 25-5-1 et seq., Ala.Code 1975,] or any similar law.” Montgomery and Rambo argue that the director of finance violated § 36-29A-4 by incorporating large portions of the workers’ compensation statutes into the administrative rules governing the State program when those rules were written. They specifically note that Rule 355-8-l-.02(e), which defines “willful conduct,” is a verbatim copy of § 25-5-11(c), and they argue that this effectively makes the State program subject to the workers’ compensation statutes, in clear violation of § 36-29A-4. We disagree.
Section 36-29A-1, Ala.Code 1975, states, in pertinent part:
“The Director of Finance shall have the authority to implement a program to provide compensation for employees of the state and its agencies, departments, boards or commissions who suffer personal injury as a result of accidents arising out of and in the course of their state employment, under such terms and conditions as the Director of Finance shall determine.”
Section 36-29A-4 thereafter explicitly provides that injured State employees and their claims for benefits are subject to the terms and conditions of the program established by the director of finance-pursuant to § 36-29A-1 and not the general workers’ compensation statutes (with the exception of a few provisions in the workers’ compensation statutes, not relevant in this case, that are specifically listed in § 36-29A-4 as applicable to State employees). Section 36-29A-4 did not prohibit the director of finance from establishing for State employees a program similarly structured to the existing program for private employees, and, indeed, it is reasonable that the director of finance would look to existing law when developing a new program for State employees. The legislature granted the director of finance the discretion to decide the “terms and conditions” of the State program, and he did not violate § 36-29A-4 merely by incorporating into the administrative rules governing the State program some of the statutory language used in the workers’ compensation statutes.
Montgomery and Rambo also argue that § 1-3-1, Ala.Code 1975, precludes this Court from interpreting Rule 355-8-1-.02 in the manner urged by the Elliotts. Section 1-3-1 states:
“The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions arid laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature.”
Montgomery and Rambo argue that, because the statutes authorizing the director of finance to establish the State program— § 36-29A-1 et seq., Ala.Code 1975 — do not specifically authorize the cause of action asserted by the Elliotts, they may seek redress only by pursuing one of the traditional common-law causes of action such as negligence, wantonness, or willfulness. However, this argument fails to recognize that the legislature did, in § 36-29A-1, delegate to the director of finance the responsibility to establish and implement a program to provide compensation for State employees injured in the scope of their employment and authorized the director of *670 finance to establish the terms and conditions of that program. Thus, the cause of action asserted by the Elliotts does have a statutory basis. Moreover, as already noted, many administrative regulations authorize causes of action, and we are not persuaded by Montgomery and Rambo’s argument that Rule 355-8-1-.02 somehow violates § 1-3-1 by doing so.
IV.
The Elliotts sued Montgomery and Rambo, alleging that the Elliotts’ injuries were the result of their willful conduct as that term in defined in Rule 355-8-1-.02. The trial court entered a summary judgment in favor of Montgomery and Rambo, holding that Rule 355-8-1-.02 does not authorize the Elliotts’ asserted cause of action. However, because the language of Rule 355-8-1-.02 clearly contemplates that a State employee might pursue an action for willfulness where his or her injuries are allegedly the result of another’s willful conduct as that term is described in that rule, the judgment of the trial court is hereby reversed, and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS and BOLIN, JJ., concur.
MURDOCK, J., concurs specially.

. Rule 355-8-1-.01, Ala. Admin. Code (Department of Finance), states, in part:
"The purpose of the [State] Employee Injury Compensation Program is to provide compensation for employees of the state and its agencies, departments, boards, or commissions, except as excluded by law, who suffer personal injury as a result of accidents arising out of and in the course of their state employment.”

. Elliott did not state a claim of common-law willfulness, presumably because such a claim traditionally requires specific proof of intent to injure and it is undisputed there was no such intent in this case. See English v. Jacobs, 263 Ala. 376, 379, 82 So.2d 542, 545 (1955) ("To constitute ‘willful or intentional injury,’ there must be knowledge of danger accompanied with a design or purpose to inflict injury, whether the act be one of omission or commission.”).