WOODALL, Justice.
 

 Voris E. Kirkland, Connie Ruth Kirkland, Charles Edward Kirkland II, and Karen Kirkland Ochoa (“the Kirklands”) sued certain underwriters at Lloyd’s; London, subscribing to policy no. CRAL1412 (“Underwriters”), seeking a judgment declaring the priority of their mortgage interests over the mortgage interest Underwriters had acquired pursuant to the mortgage clause of an insurance policy. The trial court entered a summary judgment in the Kirklands’ favor, and Underwriters has appealed. We affirm in part, reverse in part, and render a judgment for Underwriters on certain of the Kirklands’ claims.
 

 Facts and Procedural History
 

 The facts of this case are undisputed. In May 2005, Thomas David Lunceford, Jr., and Judith Saucier Kelly purchased from the Kirklands a restaurant known as “Kirk Kirkland’s Hitchin’ Post,” along with its contents and business fixtures. The purchase was financed through two loans: a $1,110,000 loan from Vision Bank secured by a first-priority mortgage on the property and a $555,000 promissory note to the Kirklands secured by a second-priority mortgage. Vision Bank had a
 
 *100
 
 first-priority lien as to the real property and a second-priority lien as to the personal property in the restaurant. The Kirk-lands’ mortgage was subordinate to Vision Bank’s mortgage as to the real property, but the Kirklands held a first-priority lien as to the personal property.
 

 Lunceford and Kelly obtained an insurance policy from Underwriters covering the real and personal property related to the restaurant.
 
 [1]
 
 The policy included coverages in the amounts of $1,500,000 for the building and $250,000 for the personal property. Vision Bank and the Kirklands were included by policy endorsements as the first and second mortgagees, respectively.
 

 The policy included a standard mortgage clause providing for payment to the mortgagees even if loss or damage resulted from the wrongful act of the insured. The policy provided, in pertinent part:
 

 “b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.
 

 [[Image here]]
 

 “e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
 

 “(1) The mortgageholder’s rights under the mortgage will be transferred to us to the extent of the amount we pay; and
 

 “(2) The mortgageholder’s right to recover the full amount of the mort-gageholder’s claim will not be impaired.
 

 “At our option, we may pay to the mort-gageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.”
 

 In November 2007, a fire, apparently set by Lunceford,
 
 [2]
 
 destroyed the restaurant and its contents. At the time of the fire, the adjusted actual cash value of the real property was $1,072,406. In 2008, Vision Bank sued Underwriters to enforce its claim to payment under the mortgage clause of the insurance policy, and the Kirklands sued Underwriters to enforce their claim to payment under the mortgage clause.
 

 Underwriters paid Vision Bank $1,072,406 and, pursuant to the mortgage clause, received an assignment of Vision Bank’s mortgage interest to the extent of that payment. Vision Bank’s remaining mortgage interest was approximately $80,000, and under the terms of its assignment to Underwriters, Vision Bank “expressly retain[ed] the first mortgage rights to” that interest. Underwriters also paid the Kirklands $250,000 for the loss of the personal property covered under the policy. The Kirklands’ remaining mortgage interest was approximately $370,000. In February 2009, the Kirklands paid Vision Bank the balance due under its mortgage, and Vision Bank then assigned its remaining mortgage interest to the Kirklands.
 

 Ultimately, after the payments to Vision Bank and the Kirklands were made, the trial court was left with only the Kirk-lands’ request for a judgment declaring whether Underwriters’ interest in the first mortgage, acquired by assignment from Vision Bank, took priority over the Kirk-
 
 *101
 
 lands’ interests in the first mortgage, also acquired by assignment from Vision Bank, and in the second mortgage. With no dispute as to the material facts, Underwriters and the Kirklands each filed a motion for a summary judgment. In their motion, the Kirklands asked the trial court to enter a judgment finding that
 

 “1) the Kirklands possess a valid first mortgage against the subject property which is superior to the interests of Underwriters;
 

 “2) the Kirklands possess a valid second mortgage against the subject property which is superior to the interests of Underwriters” .
 

 and granting “such other and further relief as th[e] Court deems appropriate.” On March 2, 2010, the trial court denied Underwriters’ summary-judgment motion and granted the Kirklands’ summary-judgment motion. Underwriters now appeals.
 

 Issue
 

 The parties agree that the only issue before this Court is whether the Kirklands’ mortgage interests take priority over Underwriters’ mortgage interest.
 

 Standard of Review
 

 “ ‘An order granting or denying a summary judgment is reviewed de novo, applying the same standard as the trial court applied.
 
 American Gen. Life & Accident Ins. Co. v. Underwood,
 
 886 So.2d 807, 811 (Ala.2004).... Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review.’ ”
 

 Elliott v. Montgomery,
 
 59 So.3d 663, 668 (Ala.2010) (quoting
 
 Continental Nat’l Indem. Co. v. Fields,
 
 926 So.2d 1033, 1034-35 (Ala.2005)).
 

 Analysis
 

 Because the Kirklands now have interests in both the first and second mortgages, we will address the question of whose mortgage interest has priority in two parts. First, we will consider whether the Kirklands’ interest in the first mortgage, obtained by assignment from Vision Bank, takes priority over Underwriters’ interest in the first mortgage, also received by assignment from Vision Bank. Second, we will consider whether the Kirk-lands’ interest in the second mortgage takes priority over Underwriters’ interest in the first mortgage. We turn first to the Kirklands’ interest in the first mortgage.
 

 “A contract of insurance, like other contracts, is governed by the general rules of contracts. Insurance companies are entitled to have their policy contract enforced as written. ‘Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.’
 

 “If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction. The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous. While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning. Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it.”
 

 Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.,
 
 817 So.2d 687, 691-92 (Ala.2001) (quot
 
 *102
 
 ing
 
 Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.,
 
 703 So.2d 866, 870 (Ala.1996) (citations omitted)).
 

 Here, the relevant terms of the insurance policy appear to be unambiguous, and neither party has argued to the contrary. As noted previously, Underwriters’ insurance policy provides, in pertinent part:
 

 “If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
 

 “(1) The mortgageholder’s rights under the mortgage will be transferred to us to the extent of the amount we pay; and
 

 “(2) The mortgageholder’s right to recover the full amount of the mort-gageholder’s claim will not be impaired.”
 

 It is undisputed that Underwriters paid Vision Bank for the loss to the property, which was apparently caused by Lunce-ford’s wrongful act. Vision Bank then assigned to Underwriters its interest in the first mortgage to the extent of Underwriters’ payment, but Vision Bank retained an $80,000 interest under the first mortgage (“the remaining interest”). Pursuant to the plain terms of the mortgage clause, the assignment to Underwriters of part of Vision Bank’s interest in the first mortgage could not impair “[Vision Bank’s] right to recover the full amount of [its] claim.” Therefore, the remaining interest has priority over Underwriters’ assigned interest.
 

 In February 2009, Vision Bank assigned the remaining interest to the Kirk-lands. “Under Alabama common law, ‘[a] valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses,’ such that the as-signee ‘simply steps into the shoes of the assignor....’”
 
 Atlantic Nat’l Trust, LLC v. McNamee,
 
 984 So.2d 375, 378 (Ala.2007) (quoting
 
 Nissan Motor Acceptance Corp. v. Ross,
 
 703 So.2d 324, 326 (Ala.1997)). The Kirklands, as assignees of the remaining interest, stepped into the shoes of Vision Bank. The remaining interest retains its priority, and the Kirklands’ interest in the first mortgage consequently takes priority over Underwriters’ interest. Therefore, we affirm the trial court’s judgment in that regard.
 

 We now address whether the Kirklands’ interest in the second mortgage also takes priority over Underwriters’ interest in the first mortgage. The Kirk-lands argue that Underwriters’ “rights cannot work to the detriment of Vision Bank (and now the Kirklands) as to the remaining $80,000 due on the first mortgage debt,” and that “the same logic would apply to the debt secured by the Kirk-lands’ second mortgage,” the Kirklands’ briéf, at 15, such that their interest in the second mortgage takes priority over Underwriters’ interest in the first mortgage. We disagree.
 

 It is undisputed that Vision Bank’s interest in the first mortgage had priority over the Kirklands’ interest in the second mortgage. Underwriters, as assignee of a part of Vision Bank’s interest under the first mortgage, “‘step[ped] into the shoes of [Vision Bank]’ ” and received “ ‘the same rights, benefits, and remedies [Vision Bank] possesse[d].’ ”
 
 McNamee,
 
 984 So.2d at 378. Therefore, Underwriters’ interest in the first mortgage, like the interest of Vision Bank before it, takes priority over the Kirklands’ interest in the second mortgage. Thus, the trial court erred in entering a summary judgment in the Kirklands’ favor as to their interest in the second mortgage.
 

 
 *103
 
 The Kirklands argue that this result violates the nonimpairment clause of the insurance policy. The nonimpairment clause provides that the transfer of a mortgage-holder’s rights pursuant to the policy will not impair “[t]he mortgageholder’s right to recover the full amount of the mortgage-holder’s claim.” The Kirklands argue that allowing Underwriters’ interest in the first mortgage to take priority over their interest in the second mortgage impairs their right to recover their mortgage debt.
 

 However, Vision Bank’s assignment to Underwriters of its interest in the first mortgage had no effect on the Kirklands’ right to recover the full amount of their debt under the second mortgage. The Kirklands’ interest was always subordinate to the interest of the first mortgagee. Therefore, the Kirklands stand in the same position they were in before Vision Bank assigned its interest to Underwriters. Thus, we cannot say that recognizing the priority of Underwriters’ interest in the first mortgage over the Kirklands’ interest in the second mortgage impairs the Kirklands’ right to recover its mortgage debt.
 
 [3]
 

 Although there does not appear to be any Alabama caselaw on point, we find the rationale of the Supreme Judicial Court of Massachusetts in
 
 Money Store/Massachusetts, Inc. v. Hingham Mutual Fire Insurance Co.,
 
 430 Mass. 298, 718 N.E.2d 840 (1999), persuasive. Chicopee Savings Bank (“Chicopee”) held a first mortgage on residential property in Springfield, Massachusetts (“the property”), and the Money Store held a second mortgage on the property. Hingham Mutual insured the property, listing the two mortgages in the order of their priority: Chicopee as the first lien and the Money Store as the junior lien. The insurance policy included a “mortgage clause,” which provided as follows:
 

 “ ‘If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages....
 

 ‘“If we pay the mortgagee for any loss and deny payment to you:
 

 “ ‘a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
 

 “ ‘b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
 

 “ ‘Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee’s claim.’ ”
 

 Money Store,
 
 430 Mass, at 300, 718 N.E.2d at 841-42.
 

 The insured in
 
 Money Store
 
 intentionally damaged the insured property. Although Hingham Mutual refused to pay the insured because of her wrongful act, Hingham Mutual paid Chicopee $40,600,
 
 *104
 
 which was the full amount owed on the first mortgage. Chicopee then assigned its mortgage rights to Hingham Mutual.
 

 Hingham Mutual foreclosed on the property, netting $21,558 from the foreclosure and resale of the property. The Money Store filed a complaint against Hingham Mutual and Chicopee, arguing, among other things, that Hingham Mutual could not affect the Money Store’s mortgage interest by exercising its assignment right to the first mortgage.
 

 The trial court entered a judgment in favor of the Money Store. However, the Massachusetts Supreme Judicial Court vacated the trial court’s judgment and ordered that a judgment be entered in Hing-ham Mutual’s favor. In so doing, the court stated:
 

 “There is nothing ambiguous in the provisions of Hingham Mutual’s policy set forth above. The policy provisions recognize that the policy may provide coverage to multiple mortgagees (‘If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages ...’). The policy provisions do not provide for any rearrangement of the priorities of mortgagees, if a first mortgagee is paid before a junior mortgagee. The policy provisions expressly direct Hing-ham Mutual to pay any mortgagee named therein and,
 
 at Hingham Mutual’s option,
 
 either to invoke that mortgagee’s subrogation rights or upon payment to the mortgagee of all monies due to receive a full assignment and transfer of the satisfied mortgagee’s rights. Hingham Mutual chose the second option (payment of all monies due Chico-pee), and it received a full assignment of Chicopee’s first mortgage. When Hing-ham Mutual exercised that option, Chi-copee’s debt was not extinguished. As a result of the assignment, Hingham Mutual succeeded to all the rights held by Chicopee to enforce its debt against the property (and to the detriment of junior liens) under the terms of the first mortgage.
 

 “Hingham Mutual was not required to exercise its rights as assignee only for the benefit of the Money Store. Hing-ham Mutual was insuring physical risks to the property and not the Money Store’s mortgage and debt. The Money Store should have been aware of these facts. If any loss was payable to mortgagees under the policy, the Money Store was on notice that Chicopee stood first in order of preference, and payment in full to Chicopee allowed Hing-ham Mutual, as assignee, to exercise all of Chicopee’s rights against the Money Store. Put differently, based on the policy language, the Money Store could harbor no reasonable expectation that Hingham Mutual’s policy would fully protect the Money Store’s security.”
 

 Money Store,
 
 430 Mass, at 301, 718 N.E.2d at 842 (citations omitted).
 

 Here, as in
 
 Money Store,
 
 the provisions of the insurance policy are unambiguous, and they provide that multiple mortgagees may be covered under the policy. Like the insurance policy in
 
 Money Store,
 
 the policy here makes no provision “for any rearrangement of the priorities of mortgagees, if a first mortgagee is paid before a junior mortgagee.”
 
 Money Store,
 
 430 Mass, at 301, 718 N.E.2d at 842. Moreover, although it did not pay Vision Bank’s entire mortgage debt, Underwriters, like Hingham Mutual, received its rights under the first mortgage by an assignment clearly authorized by its policy.
 

 It also appears that here, as in
 
 Money Store,
 
 the purpose of the insurance policy was to “insur[e] physical risks to the property and not the [Kirklands’] mortgage and debt.”
 
 Money Store,
 
 430 Mass, at
 
 *105
 
 301, 718 N.E.2d at 842. The Kirklands, like Money Store, “[were] on notice that [Vision Bank] stood first in order of preference,” and that, if some or all of Vision Bank’s rights under the first mortgage were to be transferred to Underwriters, Vision Bank’s debt would not be extinguished.
 
 Money Store,
 
 430 Mass, at 301, 718 N.E.2d at 842. Thus, the Kirklands, like Money Store, “could harbor no reasonable expectation that [the Underwriters’] policy would fully protect the [Kirklands’] security.”
 
 Id.
 

 [4]
 

 
 *106
 
 We find the Massachusetts Supreme Judicial Court’s rationale in
 
 Money Store
 
 consistent with Alabama caselaw regarding the interpretation of contracts and the assignment of legal rights. Therefore, we hold that Underwriters’ interest in the first mortgage retains priority over the Kirklands’ interest in the second mortgage; thus, the trial court erred in granting the Kirklands’ motion for a summary judgment with respect to their rights in the second mortgage.
 

 Conclusion
 

 The trial court correctly concluded that the Kirklands’ interest in the first mortgage takes priority over Underwriters’ interest in that mortgage, and we affirm the trial court’s judgment in that regard. However, the trial court erred in concluding that the Kirklands’ interest in the second mortgage takes priority over Underwriters’ interest in the first mortgage. Therefore, we reverse the trial court’s judgment in that regard, and we render a judgment in favor of Underwriters as to that issue.
 

 AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED.
 

 COBB, C.J., and LYONS, STUART, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 [1]
 

 . The policy was issued to Kelly Lunceford Properties, LLC.
 

 [2]
 

 . Underwriters states in its brief that Lunce-ford has pleaded guilty to a charge of arson in relation to the fire at the restaurant.
 

 [3]
 

 . The Kirklands argue that “Alabama law provides that an insurer's subrogation rights, whether through a written assignment or equitable subrogation, cannot work to the detriment of a loss payee or additional insured.” The Kirklands’ brief, at 14. They cite
 
 National Union Fire Insurance Co. v. Price,
 
 211 Ala. 155, 99 So. 848 (1924), and
 
 Tarrant Land Co. v. Palmetto Fire Insurance Co.,
 
 220 Ala. 428, 125 So. 807 (1930), in support of this argument. However, the case at hand does not involve any claim of equitable subrogation, and neither
 
 Price
 
 nor
 
 Tarrant Land
 
 addresses the effect of an assignment of rights on the relative priority of mortgageholders under a standard mortgage clause. Therefore, these cases do not support the Kirklands’ argument.
 

 [4]
 

 . The Kirklands argue that
 
 Money Store
 
 represents a minority rule. Further, they argue that
 
 Perretta v. St. Paul Fire & Marine Insurance Co.,
 
 106 Misc. 91, 174 N.Y.S. 131 (N.Y.Sup.Ct.), aff’d, 188 A.D. 983, 177 N.Y.S. 923 (1919);
 
 Mutual Fire Insurance Co. v. Dilworth,
 
 167 Md. 232, 173 A. 22 (1934); and
 
 First Federal Saving & Loan Ass’n of Hammonton v. Hartford Fire Insurance Co.,
 
 100 N.J.Super. 252, 241 A.2d 653 (1968), articulate a majority rule that "the second mortgagee shown as an additional insured or loss payee in an insurance policy is protected by the non-impairment provision in a standard mortgage clause.” The Kirklands’ brief, at 18. The Kirklands also argue that in
 
 Tarrant Land Co. v. Palmetto Fire Insurance Co., 220
 
 Ala. 428, 125 So. 807 (1930), this Court “cited with favor ... the analysis of the New York Supreme Court in
 
 Perretta.”
 
 The Kirklands' brief, at 17.
 

 In
 
 Tarrant Land,
 
 this Court simply noted that in
 
 Perretta
 
 the New York Supreme Court had addressed the effect of subrogation on the relative standing of mortgage interests under a mortgage clause, and had found that the insurer's subrogation rights could not be enforced over the interests of the second mortgagee. This Court then distinguished
 
 Perretta,
 
 saying that the second mortgagee in
 
 Tarrant Land
 
 did not have any rights under the mortgage clause of the insurance policy and, therefore, "if there is any subrogation shown to exist in favor of the insurer as subrogee to the first mortgagee, it thereby succeeds to all the prior rights of such mortgagee, as though no payment had been made by the insurer. It is in effect an equitable assignment and goes with its existing standing.”
 
 Tarrant Land,
 
 220 Ala. at 432-33, 125 So. at 811. This Court expressed no opinion in
 
 Tarrant
 
 Land— favorable or unfavorable — as to the
 
 Perretta
 
 court's rationale.
 

 Moreover, this case involves a transfer of a mortgage interest by assignment rather than by subrogation. As the Massachusetts Supreme Judicial Court noted in
 
 Money Store,
 
 both
 
 Perretta
 
 and
 
 Dilworth
 
 "fail to distinguish adequately between the legal significance of assignment and subrogation, and they apply the nonimpairment clause, without explanation, to an assignment in a manner contrary to the unambiguous language of the insurance policies.” 430 Mass, at 303, 718 N.E.2d at 843. Similarly,
 
 Hammonton
 
 addresses rights acquired by subrogation rather than by assignment. The Massachusetts Supreme Judicial Court went on to state that "[s]ubrogation and assignment are not the functional equivalent of each other. The former speaks in terms of broader equitable rights and remedies. Assignment is legal in nature and has an established meaning ... with respect to the rights of an assignee of a first mortgage.”
 
 Money Store,
 
 430 Mass, at 302, 718 N.E.2d at 842-43 (citations omitted). Assignment has an established meaning in Alabama law as well. As noted previously, under Alabama law, Underwriters, as assignee of Vision Bank’s interest in the first mortgage, has "the same rights benefits, and remedies that [Vision Bank] possess[ed]” against the Kirklands to the extent of its payment to Vision Bank, subject only to Vision Bank's remaining interest in the first mortgage.
 
 McNamee,
 
 984 So.2d at 378. The failure of the cases cited by the Kirklands to adequately address the distinction between interests acquired by assignment and interests acquired by subrogation renders those cases unpersuasive.
 

 The Kirklands go on to argue that
 
 Money Store
 
 is distinguishable from this case because the insurance policy in
 
 Money Store
 
 differentiated between rights acquired by subrogation and rights acquired by assignment and specifically limited the nonimpairment clause to rights acquired by subrogation. Here, the Kirklands argue, "Underwriters’ policy only uses the word 'transfer' and doesn’t differentiate between subrogation and assignment.” The Kirklands’ brief, at 28. Therefore, they argue, the nonimpairment clause in this case applies to rights transferred by either assignment or subrogation. However, as noted previously, Vision Bank’s partial assignment to Underwriters did not affect the Kirklands’ rights in the second mortgage. The Kirklands are in the same position after the assignment
 
 *106
 
 as they would have been had Vision Bank retained its mortgage interest. Therefore, the Kirklands' right to recover their mortgage debt has not been impaired, and the Kirk-lands have argued a distinction without a difference.